No. 24-1901

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

DEBRA PRATT,
*Plaintiff-Appellant,*

v.

WISCONSIN ALUMINIUM FOUNDRY,
*Defendant-Appellee.*

On Appeal United States District Court
For the Eastern District of Wisconsin
District Court Case No. 1:22-cv-00568-WCG
Honorable William Griesbach, Presiding

## BRIEF OF DEFENDANT-APPELLEE

Jennifer L. Ciralsky
Michael S. Yellin
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave. Suite 1000
Milwaukee, WI  53202
Telephone:  414.291.5536
Facsimile:  414.291.5526
myellin@littler.com
jciralsky@littler.com

Attorneys for Defendant-Appellee
Wisconsin Aluminum Foundry

## DISCLOSURE STATEMENT

Counsel of record for Defendant-Appellee Wisconsin Aluminum Foundry furnishes the following information as required by Circuit Rule 26.1 and Federal Rule of Appellate Procedure 26.1.

1.     The full name of every party that the attorney represents in the case:

Wisconsin Aluminum Foundry

2.     The names of all law firms whose partners or associates have appeared for the party in the case:

Littler Mendelson, P.C.

3.     If such party or amicus is a corporation:

    (i)     Identify all its parent corporations, if any:

None

    (ii)     list any publicly held company that owns 10% or more of the stock in the party or amicus:

No publicly held corporation owns 10% or more of the ownership interests or stock in Wisconsin Aluminum Foundry.

i

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ...............................................................I

TABLE OF AUTHORITIES ..............................................................vi

JURISDICTIONAL STATEMENT .......................................................... 1

APPELLEE'S STATEMENT OF ISSUES PRESENTED FOR
    REVIEW .................................................................................... 1

STATEMENT OF THE CASE ............................................................. 2

    I.    Pratt's employment history at WAF. .................................... 2

    II.    Emery Coonen's Environmental Health & Safety
    Manager position................................................................ 3

    III.    In February 2018 WAF retains an outside investigator
    to investigate the mishandling of a confidential
    document. ............................................................................. 4

    IV.    Pratt's numerous performance issues in the HR
    Manager role. ...................................................................... 6

    V.    WAF retains a consulting firm in July 2018 to help
    create a stable future for the company. ............................... 8

    VI.    Pratt's 2018 performance appraisal. ..................................... 9

    VII.    Jacobs' decision to terminate Pratt's employment. ............. 10

    VIII.    Pratt's March 7, 2019, email. ............................................. 10

SUMMARY OF ARGUMENT ................................................................ 11

STANDARD OF REVIEW.................................................................. 13

## TABLE OF CONTENTS
### (continued)

Page

ARGUMENT ...................................................................................... 14

I. The district court correctly granted summary judgment on Pratt's sex discrimination termination claim. ................ 14

    A. Pratt waived her Title VII discriminatory termination claim in the district court. ...................... 14

    B. Even if not waived, Pratt failed to satisfy the elements of a prima facie sex-discrimination claim. ........................................................................... 16

        1. The district court correctly found that Pratt failed to meet WAF's legitimate performance expectations ................................. 17

            a. Pratt mishandled confidential documents. ................................................ 17

            b. Coworkers distrusted Pratt. ..................... 20

            c. Pratt made numerous errors in her work ........................................................ 23

        2. Pratt submits no evidence of pretext on appeal. ............................................................. 25

        3. The district court correctly found that no similarly situated employee outside of Pratt's protected class was treated more favorably than her. ............................................. 26

II. The district court correctly granted summary judgment on Pratt's discriminatory pay claim. ................................... 28

## TABLE OF CONTENT
### (continued)

Page

III.  The district court correctly granted summary judgment on Pratt's retaliation claim...................................................30

    A.  The district court applied the correct standard under Title VII. ............................................................31

    B.  The district court correctly concluded that Pratt did not engage in protected activity............................32

        1.  The district court correctly concluded that Pratt's February 2018 report about Boyd is not protected activity...........................................32

        2.  The district court correctly concluded that Pratt's March 7, 2019, email is not protected activity...............................................................35

        3.  The sham affidavit rule bars the other alleged protected activity cited by Pratt............38

        4.  The district court did not create a manager rule. .............................................................40

        5.  The *amicus* brief's focus on a hostile work environment standard is a red-herring because Pratt has waived any such argument............................................................43

    C.  The district court correctly concluded that there is no causal connection between Pratt's alleged protected activity and the adverse employment actions...................................................................49

## TABLE OF CONTENT
### (continued)

Page

1.  There is no genuine dispute that Jacobs made the decision to terminate Pratt's employment before March 7, 2019. .................... 49

2.  Pratt has no evidence of a causal connection between any other alleged protected activity and the termination of her employment. ........... 52

D.  WAF had legitimate reasons for terminating Pratt's employment and there is no evidence of pretext. ................................................................... 55

CONCLUSION ................................................................................. 55

## TABLE OF AUTHORITIES

**Cases**                                                      **Page**

*Abebe v. Health & Hosp. Corp. of Marion Cnty.*,
35 F.4th 601 (7th Cir. 2022) ...................... 53

*Adusumilli v. City of Chicago*,
164 F.3d 353 (7th Cir.1998) ...................... 33

*Amadio v. Ford Motor Company*,
238 F.3d 919 (7th Cir. 2001) ...................... 40

*Argyropoulos v. City of Alton*,
539 F.3d 724 (7th Cir. 2008) ...................... 37

*Babrocky v. Jewel Food Co. & Retail Meatcutters Union*,
773 F.2d 857 (7th Cir. 1985) ...................... 39

*United States v. Berkowitz*,
927 F.2d 1376 (7th Cir. 1991) ...................... 14

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*,
671 F.3d 635 (7th Cir. 2011) ...................... 38

*Bradley v. Vill. of Univ. Park, Illinois*,
59 F.4th 887 (7th Cir. 2023) ...................... 44, 52

*Brewer v. Bd. of Trs. of Univ. of Ill.*,
479 F.3d 908 (7th Cir. 2007) ...................... 54

*Brown v. Advocate S. Suburban Hosp.*,
700 F.3d 1101 (7th Cir. 2012) ...................... 26

*Burks v. Wisconsin Dep't of Transp.*,
464 F.3d 744 (7th Cir. 2006) ...................... 28

*Chaib v. Indiana*,
744 F.3d 974, 987 (7th Cir. 2014) ...................... 47

vi

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                  **Page**

*Charles v. Daley,*
  846 F.2d 1057 (7th Cir. 1988) ............................................................... 46

*Ciomber v. Cooperative Plus, Inc.,*
  527 F.3d 635 (7th Cir. 2008) ................................................................. 20

*Clark Cnty. Sch., Dist. v. Breeden,*
  532 U.S. 268 (2001) ................................................................... 33, 49, 51

*Cooper-Schut v. Visteon Auto. Sys.,*
  361 F.3d 421 (7th Cir. 2004) ................................................................. 48

*Crawford v. Metro. Gov. of Nashville & Davidson Cnty.,*
  555 U.S. 271 (2009) ................................................................... 31, 34, 41

*Crespo v. Colvin,*
  824 F.3d 667 (7th Cir. 2016) ................................................................. 37

*Cyriac v. Washington Group, Inc.,*
  766 F.3d 735 (7th Cir. 2014) ................................................................. 40

*Davidson v. Midelfort Clinic, Ltd.,*
  133 F.3d 499 (7th Cir. 1998) ................................................................. 53

*Domka v. Portage Cnty., Wis.,*
  523 F.3d 776 (7th Cir. 2008) ................................................................. 45

*Downing v. Abbott Labs.,*
  48 F.4th 793 (7th Cir. 2022) ................................................................. 28

*Fednav Int'l Ltd. v. Cont'l Ins. Co.,*
  624 F.3d 834 (7th Cir. 2010) ................................................................. 45

*Ferrill v. Oak Creek-Franklin Joint Sch. Dist.,*
  860 F.3d 494 (7th Cir. 2017) ........................................................... 17, 52

vii

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                                       **Page**

*Filar v. Bd. of Educ. of City of Chicago,*
526 F.3d 1054 (7th Cir. 2008)......................................................27, 28

*Filipovic v. K & R Express. Sys., Inc.,*
176 F.3d 390 (7th Cir. 1999).................................................................53

*Ford v. Minteq Shapes & Servs., Inc.,*
587 F.3d 845 (7thCir. 2009).................................................................47

*Frakes v. Peoria Sch. Dist. No. 150,*
872 F.3d 545 (7th Cir. 2017).................................................................35

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U,*
789 F.3d 707 (7th Cir. 2015).................................................................21

*Gates v. Caterpillar, Inc.,*
513 F.3d 680 (7th Cir. 2008).................................................................40

*Greenbank v. Great Am. Assurance Co.,*
47 F.4th 618 (7th Cir. 2022) .................................................................52

*Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.,*
224 F.3d 701 (7th Cir. 2000).................................................................31

*Hughes v. Derwinski,*
967 F.2d 1168 (7th Cir. 1992).................................................................53

*Igasaki v. Illinois Dep't of Fin. & Pro. Regul.,*
988 F.3d 948 (7th Cir. 2021)............................................. 13, 51, 54, 55

*Johnson v. Advocate Health & Hosps. Corp.,*
892 F.3d 887 (7th Cir. 2018).................................................................28

*Just. v. CSX Transp., Inc.,*
908 F.2d 119 (7th Cir. 1990).................................................................45

viii

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                                    **Page**

*Kampmier v. Emeritus Corp.,*
    472 F.3d 930 (7th Cir. 2007) ................................................................ 48

*Khungar v. Access Cmty. Health Network,*
    985 F.3d 565 (7th Cir. 2021) ................................................................ 54

*Klein v. O'Brien,*
    884 F.3d 754 (7th Cir. 2018) ................................................................ 14

*Kodish v. Oakbrook Terrace Fire Prot. Dist.,*
    604 F.3d 490 (7th Cir. 2010) ................................................................ 24

*Lauth v. Covance, Inc.,*
    863 F.3d 708 (7th Cir. 2017) ........................................................... 23, 24

*Lesiv v. Illinois Cent. R.R. Co.,*
    39 F.4th 903 (7th Cir. 2022) ................................................................ 31

*Littlejohn v. City of New York,*
    795 F.3d 297 (2d Cir. 2015) ........................................................... 34, 41

*Loeb Indus., Inc. v. Sumitomo Corp.,*
    306 F.3d 469 (7th Cir. 2002) ................................................................ 42

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024) ......................................................................... 40

*Magin v. Monsanto Co.,*
    420 F.3d 679 (7th Cir. 2005) ................................................................ 51

*Maldonado v. U.S. Bank,*
    186 F.3d 759 (7th Cir. 1999) ................................................................ 39

*Mattson v. Caterpillar, Inc.,*
    359 F.3d 885 (7th Cir. 2004) ................................................................ 33

**TABLE OF AUTHORITIES**
(continued)

**Cases**                                                                 **Page**

*McCoy v. Atherton,*
  818 F. App'x 538 (7th Cir. 2020) ........................................................ 45

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) ............................................................................ 16

*McKinney v. Off. of Sheriff of Whitley Cnty.,*
  866 F.3d 803 (7th Cir. 2017) .............................................................. 51

*Miller v. A.H. Robins Company, Inc.,*
  766 F.2d 1102 (7th Cir. 1985) ............................................................ 40

*Miller v. Am. Fam. Mut. Ins. Co.,*
  203 F.3d 997 (7th Cir. 2000) .............................................................. 36

*Milwaukee Ctr. for Indep., Inc. v. Milwaukee*
  *Health Care, LLC,*
  929 F.3d 489 (7th Cir. 2019) .............................................................. 44

*O'Brien v. Caterpillar Inc.,*
  900 F.3d 923 (7th Cir. 2018) ........................................................ 34, 52

*O'Leary v. Accretive Health, Inc.,*
  657 F.3d 625 (7th Cir. 2011) ..................................................... *passim*

*Olsen v. Marshall & Ilsley Corp.,*
  267 F.3d 597 (7th Cir. 2001) .............................................................. 26

*Packer v. Trs. of Ind. Univ. Sch. of Med.,*
  800 F.3d 843 (7th Cir. 2015) .............................................................. 15

*Patel v. Allstate Ins. Co.,*
  105 F.3d 365 (7th Cir. 1997) .............................................................. 24

*Patterson v. Georgia Pacific, LLC,*
  38 F. 4th 1336 (11th Cir. 2022) .................................................... 34, 41

x

*Poullard v. McDonald,*
  829 F.3d 844 (7th Cir. 2016)......................................................15

*Puffer v. Allstate Ins. Co.,*
  675 F.3d 709 (7th Cir. 2012).......................................................45

*Reynolds v. Extendicare Health Servs., Inc.,*
  257 Fed. App'x. 914 (6th Cir. 2007)...................................................51

*Rongere v. City of Rockford,*
  99 F.4th 1095 (7th Cir. 2024) ................................................... 16, 17

*Salvato v. Ill. Dep't. of Human Rights,*
  155 F.3d 922 (7th Cir. 1998).......................................................53

*Scheidler v. Indiana,*
  914 F.3d 535 (7th Cir. 2019).......................................................47

*Shramek v. Apfel,*
  226 F.3d 809 (7th Cir. 2000).......................................................42

*Singmuongthong v. Bowen,*
  77 F.4th 503 (7th Cir. 2023) .......................................................16

*Skiba v. Ill. C. RR. Co.,*
  884 F.3d 708 (7th Cir. 2018).......................................................35

*Smith v. Chi. Transit Auth.,*
  806 F.3d 900 (7th Cir. 2015).......................................................16

*Smith v. Lafayette Bank & Trust Co.,*
  674 F.3d 655 (7th Cir. 2012)................................................... 35, 48

*Springer v. Durflinger,*
  518 F.3d 479 (7th Cir. 2008)................................................... 51, 54

*Swinney v. Ill. State Police,*
  332 Fed. App'x 316 (7th Cir. 2009)...................................................36

*Tomanovich v. City of Indianapolis,*
  457 F.3d 656 (7th Cir. 2006)................................................... 48, 53

xi

## TABLE OF AUTHORITIES
### (continued)

**Cases**                                                                                  **Page**

*United States v. Torres,*
    142 F.3d 962 (7th Cir. 1998)...............................................................14

*Turner v. The Saloon, Ltd.,*
    595 F.3d 679 (7th Cir. 2010)...............................................................53

*United Cent. Bank v. Davenport Est. LLC,*
    815 F.3d 315 (7th Cir. 2016)...............................................................37

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013).............................................................................52

*Williams v. Dieball,*
    724 F.3d 957 (7th Cir. 2013)...............................................................44

*Wonsey v. City of Chicago,*
    940 F.3d 394 (7th Cir. 2019)...............................................................14

**Statutes**

28 U.S.C. § 2111..............................................................................34, 42

42 U.S.C. § 2000e-3(a) ...................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(c)(4)............................................................................51

Fed. R. App. P. 28(a)(6) ...........................................................................21

Fed. R. Evid. 801(c)(2) .............................................................................21

E.D. Wis. Civ. L.R. 56(b)(2) ....................................................................19

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Debra Pratt's ("Pratt") jurisdictional statement is complete and correct.

## APPELLEE'S STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court correctly dismissed Pratt's Title VII sex discrimination claim (termination of employment) because she waived it, and, notwithstanding such waiver, because she failed to satisfy the elements of a prima facie claim?

2.      Whether the district court correctly dismissed Pratt's Title VII sex discrimination claim (pay discrimination) because she failed to identify any similarly situated employees who were treated more favorably than her?

3.      Whether the district court correctly dismissed Pratt's Title VII retaliation claim because she failed to present evidence that she was engaging in a protected activity, and, alternatively, because she failed to present evidence of causation or pretext?

## STATEMENT OF THE CASE

### I.     Pratt's employment history at WAF.

Wisconsin Aluminum Foundry ("WAF") hired Pratt as an HR/benefits administrator in August 2016, initially reporting to Human Resources Manager Jim Behnke. R. 45 at 1; R. 39 at ¶¶ 1–2. Behnke left WAF in February 2017 and Pratt was moved into the Human Resources ("HR") Manager position. R. 45 at 1; R. 39 at ¶ 4. Pratt reported to Ben Jacobs, Senior Vice President, Chief Product Officer, in this role. R. 45 at 1; R. 39 at ¶ 6.

Pratt's job responsibilities as HR Manager included, in part: responding to employee complaints and conducting investigations in response to employee complaints, developing and administering various human resources plans and procedures, recruiting certain categories of employees, administering corrective action, developing and implementing personnel policies and procedures, establishing and maintaining personnel records, implementing WAF's compensation program, writing job descriptions, managing worker's compensation claims, and overseeing the company newsletter. R. 39 at ¶¶ 15–16.

2

## II.    Emery Coonen's Environmental Health & Safety Manager position.

WAF hired Emery Coonen as the Environmental Health & Safety Manager ("EHS") Manager on May 8, 2017. R. 45 at 11; R. 39 at ¶ 23. Jacobs did not set Coonen's salary. R. 45 at 12–13; R. 39 at ¶ 24. Coonen reported to Eugene Boyd, Vice President Operations. R. 39 at ¶ 25. Coonen's overall job responsibilities included anticipating, assessing and addressing operational safety, environmental risks, and safety opportunities to improve the conditions of WAF's workforce and the company's footprint in both the community and environment. R. 45 at 12; R. 39 at ¶ 26. Coonen's specific job duties included, in part: developing and administering various environmental, health and safety plans and procedures for all WAF personnel; planning, organizing, and controlling all activities of the safety department; identifying risks and implementing plans and procedures for mitigating risk; performing Job Safety Analysis and implementing procedures to support employee safety; and measuring and recording environmental data for DNR-EPA compliance. R. 45 at 12; R. 39 at ¶ 26.

When Behnke was in the HR Manager position, he was responsible for environmental health and safety, in addition to his HR

3

responsibilities. R. 45 at 12; R. 39 at ¶ 29. Pratt updated the HR Manager job description in July 2017 to remove the EHS responsibilities "because that was now Emery's job." R. 45 at 12; R. 39 at ¶ 31. Of the 15 essential functions on the HR Manager job description that Pratt prepared, Coonen shared only two responsibilities with Pratt: (1) both would have been involved with responding to OSHA if they visited the company; and (2) both attended meetings related to the company's worker's compensation plan, which occurred up to five times a year. R. 45 at 12; R. 39 at ¶ 32.

## III. In February 2018 WAF retains an outside investigator to investigate the mishandling of a confidential document.

In February 2018, Maintenance Manager Rick Redeker presented Jacobs with a four-page document Redeker said he had found on the copy machine in the HR area. R. 45 at 2–3; R. 39 at ¶ 33. The document contained highly confidential employee information, including two pages about an employee issue in December 2017 and two pages about a "complaint of unprofessional behavior" on February 12, 2018, and the investigation of that complaint. R. 45 at 2–3; R. 39 at ¶ 34. WAF hired Amy Hartwig of GO Management Solutions, LLC to conduct an investigation to determine: (1) the author of the confidential document;

4

(2) how the confidential document was obtained by Redeker; and (3) the veracity of allegations contained within the confidential document related to comments allegedly made by Boyd and Material Manager Lili Goehring. R. 45 at 2–3; R. 39 at ¶ 35.

Unaware of the third-party investigation, Pratt sent an email to Jacobs on February 19, 2018, attaching a two-page document describing her investigation into the February 12, 2018, complaint of unprofessional behavior. R. 45 at 2–3; R. 39 at ¶ 36. The document Pratt attached to her February 19, 2018, email was a slightly different version of the document Redeker found on the printer. R. 45 at 2–4; R. 39 at ¶ 39. The document Pratt sent Jacobs on February 19 included several paragraphs of "Findings," despite the fact that Pratt had not interviewed Boyd or Goehring before reaching these "Findings." R. 45 at 2–4; R. 39 at ¶¶ 40–41. The incident between Boyd and Goehring involved a single instance of sexual innuendo or joking between them, which neither found unwelcome. R. 45 at 3–4, 17.

Hartwig concluded, among other things, that Pratt was the author of the confidential document, Pratt's handling of that document showed a lack of experience and sound judgment; Pratt prematurely and

5

inappropriately made factual and legal conclusions without conducting a full and fair investigation into the actual facts; and Pratt was not qualified to make legal conclusions as evidenced by the fact that the conclusions she reached in the document were not actually supported by the document itself. R. 45 at 2–4; R. 39 at ¶ 44. Pratt acknowledged that it would have been problematic to leave the confidential document on a printer and understood why the company would be concerned that Redeker had obtained a copy of the document (*i.e.*, because it was confidential). R. 45 at 4; R. 39 at ¶¶ 45–46.

## IV.    Pratt's numerous performance issues in the HR Manager role.

In addition to the performance issues described in Hartwig's report, Pratt displayed other significant deficiencies in the day-to-day performance of her job. In January 2018, Controller Jody Rabitz and Payroll Clerk Lisa Novachek pointed out numerous errors by Pratt in a master spreadsheet of benefits information, which Pratt was responsible for preparing, and Rabitz explained "[w]e cannot afford for the information to not line up because screens aren't coordinated correctly." R. 45 at 2; R. 39 at ¶¶ 50–51. Rabitz sent another email to Pratt that month questioning a number of details in the master spreadsheet. R. 45

6

at 2; R. 39 at ¶ 52. Rabitz described the process as being "very confusing" and Pratt acknowledged making mistakes during the process. R. 45 at 2; R. 39 at ¶ 53.

Rabitz also described Pratt's process for recording Health Savings Account contributions in January 2018 as being disorganized and not working for WAF's payroll department. R. 45 at 2; R. 39 at ¶ 54. In a January 15, 2018, email to Pratt, Rabitz questioned why the HR employees did not work on a Saturday to ensure data was accurate given its critical nature. R. 45 at 2; R. 39 at ¶ 55. In April 2018, Novachek questioned Pratt as to why she had not caught a January rate change for insurance premiums. The error was caught by another employee in April, and if that employee had not caught the error, "it would be ongoing." R. 45 at 2; R. 39 at ¶ 56. In December 2018, Pratt provided Rabitz with a list of employees for open enrollment that were not classified correctly. R. 39 at ¶ 57.

In addition to these errors, numerous employees told Jacobs they did not trust Pratt, including, among others: Redeker, Tom Culp, Behnke, Novachek, Laurie Steeber, Arthur Sprague, Boyd, David Bergene, and Lili Goehring. R. 39 at ¶ 60; R. 33-2 (54:4-5). Jacobs

7

"couldn't walk through the foundry without many random workers expressing their concern with the direction the HR department was going," including that Pratt was self-dealing, had favorites, people did not trust her, and employees were afraid to talk to her and were afraid to seek help. R. 39 at ¶ 61. The HR department through Pratt was seen as a major contributor to the rumor mill. R. 39 at ¶ 65. In August 2018, Jacobs also learned from a colleague that the two employees who reported to Pratt stated they "were living in hell" working for Pratt, were not getting training, were very unhappy, and felt they were not growing professionally. R. 39 at ¶ 67.

## V.    WAF retains a consulting firm in July 2018 to help create a stable future for the company.

In July 2018, WAF's Board of Directors retained a consulting group, the Utech Group, to partner with the company to assist in creating a strong and stable future for the organization, including the alignment and development of the Board of Directors and leaders of the company. R. 45 at 4–5; R. 39 at ¶ 70. Utech staff interviewed 51 WAF leaders and employees, including Pratt, as part of its consulting project. R. 45 at 4–5; R. 39 at ¶ 71. Utech then provided the WAF Board with a document titled Feedback Themes and Trends, which was the result of their interviews

with 51 WAF leaders and employees. R. 45 at 4–5; R. 39 at ¶ 72. The document explained, in part: all feedback contained in this document reflect general themes that were articulated by more than five individuals and the feedback is not attributed to any specific individuals. R. 45 at 4–5; R. 39 at ¶ 73.

The "Concerns" identified for Pratt in Utech's September 27, 2018 report included that Pratt lacks the trust of people in the organization, has a hidden agenda, gossips and backstabs, and holds grudges against employees. R. 45 at 4–5; R. 39 at ¶ 76. The key themes for Pratt included, in part: "Deb has a difficult challenge ahead. She has not built trust with many in the organization. Many see Deb as having her own agenda, focusing on investigating people and making issues more dramatic than necessary. She is also feeding into the culture of gossip instead of being the one to stop it." R. 45 at 4–5; R. 39 at ¶ 77.

## VI.   Pratt's 2018 performance appraisal.

Pratt received an overall performance rating of 10 out of 32 in her 2018 Employee Performance Appraisal, which was prepared by Jacobs and delivered to Pratt on December 7, 2018. R. 45 at 5; R. 39 at ¶¶ 78–79. Jacobs rated Pratt's overall performance as a 0 out of 2 (*i.e.*, Below

9

Expectations), in part because "HR is supposed to be a safe confidential place for the organization, and I believed under Deb it was not that" because employees were not comfortable going to HR with an issue. R. 45 at 5; R. 39 at ¶ 80.

## VII. Jacobs' decision to terminate Pratt's employment.

Jacobs made the decision to terminate Pratt's employment and requested approval from the Board of Directors to do so before March 7, 2019. R. 39 at ¶¶ 93-94. Board Member Berel Lutsky approved the termination decision and Jacobs and Lutsky met with Pratt on March 15, 2019 to terminate her employment. R. 45 at 5; R. 39 at ¶ 95. Jacobs and Lutsky determined they needed to make a change in the HR leadership because of Pratt's ongoing performance deficiencies, including, for example: difficulties with her day-to-day job responsibilities, other employees' lack of trust in Pratt, the results of Hartwig's investigation, the results of the Utech report, and the challenges caused by Pratt's failure to follow WAF's hiring process for a union position. R. 45 at 5; R. 39 at ¶ 96.

## VIII. Pratt's March 7, 2019, email.

On March 7, 2019, after Jacob's decision to terminate Pratt's employment, but before that decision was communicated to her on March

10

15, Pratt sent an email to Jacobs questioning various portions of her 2018 review and raising "additional concerns" about various topics, such as HR staffing, the leadership team, and union negotiations. R. 39 at ¶ 85. Pratt's March 7, 2019 email stated, in part: "it is my perception that you do not like me and feel this is directly related to the events in February and due to my inability to turn a blind eye to those events," referring to the February 2018 investigation into Boyd and Goehring. R. 45 at 5; R. 39 at ¶ 86. The email also said: "I was participating in a protected activity in February 2018, and I feel I have suffered retaliation on a repeated basis as a result," referring to the February 2018 investigation into Boyd. R. 45 at 5; R. 39 at ¶ 86.

## SUMMARY OF ARGUMENT

Pratt asserted three separate Title VII claims in the district court: (1) discriminatory discharge; (2) pay discrimination; and (3) retaliation. The district court granted summary judgment in WAF's favor for each claim.

***Discriminatory discharge.*** The district court correctly granted summary judgment against Pratt's claim for discriminatory discharge because she waived it. Pratt's brief opposing summary judgment focused

solely on her Title VII retaliation claim, not her Title VII sex discrimination claim, resulting in waiver. Even if not waived, the district court properly concluded that Pratt cannot, as a matter of law, make a prima facie case of sex discrimination because (1) two reports by independent employer consultants and other undisputed evidence establishes that Pratt was not meeting WAF's legitimate performance expectations; (2) Pratt failed to present evidence that any similarly situated male employee was treated differently; and (3) Pratt submitted no evidence of pretext that even remotely suggests she was terminated on account of her sex.

***Pay discrimination.*** The district court correctly granted summary judgment on Pratt's pay discrimination claim. To survive summary judgment on this claim, Pratt must show similarly situated male employees—meaning employees with similar job responsibilities or at least reporting to the same supervisor—were treated more favorably by WAF. Her only proposed comparator (Coonen) held a different position, had substantially different job responsibilities, and reported to a different supervisor than Pratt.

12

***Retaliation***. The district court correctly granted summary judgment on Pratt's retaliation claim because she failed to establish that she engaged in a protected activity, failed to show evidence of causation, and failed to show evidence of pretext. Pratt cannot establish that she engaged in protected activity because the alleged activities involve: (1) Pratt's investigation of alleged isolated stray remarks that do not give rise to an objectively reasonable belief that they involved discrimination that is prohibited by Title VII; and (2) Pratt's investigation of generalized employee complaints that are not protected activity under Title VII. The balance of "facts" Pratt relies on to show purportedly protected activity are barred by the sham affidavit rule. Moreover, no evidence exists to show a causal connection between any alleged protected activity and the termination of Pratt's employment.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 955 (7th Cir. 2021).

13

## ARGUMENT

I. **The district court correctly granted summary judgment on Pratt's sex discrimination termination claim.**

A. **Pratt waived her Title VII discriminatory termination claim in the district court.**

"A party asking this court to reverse a district court's judgment must 'argue why we should reverse that judgment' and 'cite appropriate authority to support that argument.'" *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). "[A]n appellate brief that does not even try to engage the reasons the appellant lost has no prospect of success. *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018).

Here, the district court found that Pratt abandoned her discriminatory discharge claim because she did not argue it in her brief opposing summary judgment. R. 45 at 8.[1] More specifically, the court concluded that "[t]he meat of Ms. Pratt's argument is that she was terminated . . . in retaliation for her Title VII protected reporting," which

---

[1] "'[I]ssues not raised in the district court are deemed waived' on appeal, so long as the opposing party argues that a waiver of that issue occurred." *United States v. Torres*, 142 F.3d 962, 968–69 (7th Cir. 1998) (citation omitted). In the district court here, WAF argued that Pratt waived her sex-discrimination claim because "her actual arguments focus solely on her Title VII retaliation claim—not her Title VII sex discrimination claim." R. 43 at 1–2.

14

"amounts to an argument in support of her retaliation claim, not in support of discriminatory termination on the basis of sex." Pratt's appeal brief does not attempt to show how the district court erred in concluding she waived this claim. Instead, Pratt argues—for the first time—that her "sex-based discrimination [claim] is essentially an argument in the alternative to her retaliation claim." App. Br. 30.[2] Pratt's eleventh-hour attempt to bootstrap her retaliation arguments to sex-discrimination arguments "is not enough to preserve h[er] claims on appeal." *Poullard v. McDonald*, 829 F.3d 844, 852 n.2 (7th Cir. 2016) (holding same in response to "briefs [that] refer to 'race/sex' discrimination in tandem with one another"). "A district court may reasonably expect a party opposing summary judgment to lay out its case thoroughly" so that the court is not forced to construct the arguments itself. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 853 (7th Cir. 2015). Pratt failed to do so, resulting in waiver.

---

[2] Citations to Pratt's Opening Brief on Appeal are "App. Br."

**B.      Even if not waived, Pratt failed to satisfy the elements of a prima facie sex-discrimination claim.**

In this appeal, Pratt tried to prove her discriminatory termination claim under the *McDonnell Douglas Corp. v. Green* burden-shifting framework for circumstantial proof. 411 U.S. 792, 802 (1973). *See* App. Br. 30; R. 36 at 3. Regardless of the framework, the ultimate question is "whether a reasonable jury could find that the plaintiff suffered an adverse action because of [her] protected characteristics." *Singmuongthong v. Bowen*, 77 F.4th 503, 508 (7th Cir. 2023) (citation omitted).

Under the *McDonnell Douglas* test, to survive a motion for summary judgment, Pratt must make out the four elements of a prima facie case: (1) that she is a member of a protected class; (2) that she performed her job to her employer's expectations; (3) that she suffered an adverse employment action; and (4) that one or more similarly situated individuals outside her protected class received better treatment. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015). "If the plaintiff meets her burden, the defendant must provide a nondiscriminatory reason for the adverse action." *Rongere v. City of Rockford*, 99 F.4th 1095, 1103 (7th Cir. 2024). The burden then "shifts back to the plaintiff to prove

16

that the proffered reasons were mere pretext." *Id.* "'Pretext' is more than a mere mistake; it 'means a lie'—a 'phony reason' for the employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (citation omitted).

Despite concluding that Pratt waived her discriminatory termination claim, the district court still conscientiously analyzed the record and granted summary judgment to WAF for three reasons: (1) "undisputed evidence establishes that [Pratt] was not meeting WAF's legitimate performance expectations"; (2) "no evidence has been submitted that even suggests the decision to terminate Ms. Pratt was on account of her sex"; and (3) "Ms. Pratt has failed to present evidence that any similarly situated employee was treated differently." R. 45 at 8, 11.

### 1. The district court correctly found that Pratt failed to meet WAF's legitimate performance expectations.

Several facts, including the findings of two separate external consultants' reports, support the district court's conclusion that Pratt failed to meet WAF's performance expectations.

#### a. *Pratt mishandled confidential documents.*

The district court found that in February 2018, Redeker found a four-page report on the copy machine in WAF's HR area, where Pratt

17

worked. R. 45 at 2. The report contained highly confidential employee information, including information about drug screens, allegations of drug use, internal investigations into allegations of verbal abuse, complaints about special treatment, and complaints about and Eugene Boyd's use of "sexual innuendos" with a subordinate employee. R. 45 at 2–4, 8; R. 33-1 at 183–86; R. 32 at ¶¶ 33–34. Redeker turned in the document to Jacobs. R. 45 at 2.

In response, WAF hired a third-party investigator, Hartwig, to determine the document's author, how Redeker found the document, and the veracity of the allegations within the document. R. 45 at 3; R. 32 at 35. Hartwig made the following conclusions: (1) Pratt authored the confidential report and left it accessible to others in the HR office; (2) the confidential report was seen by several employees who should not have seen it; and (3) Pratt knew the report contained confidential and sensitive information yet failed to safeguard it. R. 45 at 4; R. 32 at ¶¶ 43–44. Hartwig critiqued not only Pratt's handling of the confidential document, but also how Pratt conducted her investigation. In particular, Hartwig concluded that Pratt's report made premature and inappropriate factual and legal conclusions in the report without conducting a full and fair

18

investigation into actual facts. *Id.* These impulsive conclusions reflected "a lack of experience and sound judgment." *Id.*

On appeal, as in the district court, Pratt made no effort to disprove Hartwig's findings or WAF's reliance on them. Instead, she now contends for the first time that Redeker "was credibly accused of stealing the documents from Pratt's desk." App. Br. 12. This new theft accusation was not included in Pratt's proposed findings of fact in the district court. Nor does she identify who made this accusation (if not herself) or what makes it "credible." It also contradicts Pratt's representations in the district court. Namely, Pratt responded the following facts were "[n]ot disputed": (1) Hartwig concluded that the confidential report "was left unattended in the HR Office (most likely on the copy machine/printer)"; and (2) Redeker said he found the report on a copy machine in the HR area. R. 39 at 9–10 (¶ 44).

Local rules required Pratt to file "a concise response" to WAF's statement of facts, "including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." E.D. Wis. Civ. L.R. 56(b)(2). Such facts ought to have included Pratt's new and unsupported allegation that

19

Redeker stole the confidential documents from her desk. Pratt's proposed facts and her response to WAF's proposed facts failed to cite any such allegation, much less prove it to be true. Pratt plainly failed to comply with local rules and this Court should disregard her attempt to circumvent them on appeal. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008).

### b.     Coworkers distrusted Pratt.

The district court also found that many coworkers simply did not trust Pratt. It based this finding on the independent Utech report, which concluded after interviewing 51 WAF leaders and employees that, as the district court put it, Pratt "had not built trust with many in the organization, that she was seen as having her own agenda, focusing on investigating people and making issues more dramatic than necessary, and that she was feeding into the culture of gossip instead of being the one to stop it." R. 45 at 5, 9. In addition to the findings of the Utech report, Jacobs testified that he "couldn't walk through the foundry without many

20

random workers expressing their concern with the direction of the HR department was going." R. 45 at 10; R. 32, ¶ 61.[3]

Pratt dismisses the court's findings, arguing "this lack of trust" involves only "the same individuals who Pratt made protective reports against," namely Boyd, Culp, Redeker, Tom Behnke. App. Br. 11, 14–15. The record contradicts this contention. Many others complained of trust concerns with Pratt, including Lisa Novachek, Laurie Steeber, Arthur Sprague, David Bergene, and Lili Goehring. R. 32 at ¶ 60; R. 33-2 (54:4–5).[4]

Pratt submits a similarly incomplete account of the Utech report, saying it "was critical of many managerial employees, including Pratt, Jacobs, Boyd, and Boyd's reports." But in the district court, she conceded

---

[3] The district court observed that Pratt "objects to much of this evidence as hearsay" yet concluded these statements were "not offered to prove the truth of the matter asserted, however, but to show what information Mr. Jacobs received and acted upon." R. 45 at 10 (citing Fed. R. Evid. 801(c)(2). Pratt does not challenge this ruling on appeal and makes no mention of it in her opening brief.

[4] Pratt also contends that "Jacobs knew the employees who did not trust Pratt were retaliating against Pratt for reporting their unlawful conduct," but she offers no record cite to support this statement. App. Br. 15. An appellant's opening brief must contain "a concise statement of the case setting out the facts relevant to the issues submitted for review . . . with appropriate references to the record." Fed. R. App. P. 28(a)(6). "Because [Pratt] violated Rule 28," this Court should "strike all portions of [her] argument section that rely on unsupported facts or fail to identify a specific error in the district court's decision." *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 712 (7th Cir. 2015).

"the Utech report is generally critical of *all* managers discussed in it." R. 38 at ¶ 22 (emphasis added). Tellingly, Pratt submits no record cites to support her contention that Utech's report was "uniformly similar in negativity and severity" toward Pratt's male peers as it was for her. App. Br. 33. Relatedly, Pratt contends that she "was disciplined and fired for the same issues that her male peers had without consequence." App. Br. 31. But, once again, she offers no evidence or reference to the record that identifies those "male peers" or how they had "the same issues." Nor could she because that statement is plainly false. There is simply no evidence that similarly situated male employees received the same level of negative ratings in the Utech report as Pratt. As the district court correctly found, "a careful reading of the Utech report reveals . . . the strengths and concerns set out in the report" for other employees "were significantly different than for Ms. Pratt." R. 45 at 10.[5]

---

[5] Pratt contends her "termination is plainly sex based" "if the Utech report was the sole basis for [her] termination. App. Br. 32. Her attempt to discredit a report that placed a bright spotlight on her poor work performance is unsurprising. In any event, as the district court found, several errors and issues, in addition to those mentioned in the Utech report, were the cause for her termination. R. 45 at 8–11; *infra* at infra at 5-7.

22

### c.     *Pratt made numerous errors in her work.*

The district court also found that Pratt displayed other significant deficiencies in the day-to-day performance of her job. In January 2018, WAF's controller and payroll clerk corrected numerous errors and incorrect data in a master spreadsheet of employee benefits prepared by Pratt. R. 45 at 2, 8–9; R. 39 at ¶¶ 51–56. Pratt does not dispute that she made the errors or the significance of those errors. R. 39 at ¶ 53. Further undisputed errors in 2018 included Pratt's failure to catch a rate change for insurance premiums and maintaining a disorganized process for recording health savings account contributions. *Id.*, ¶¶ 54, 56.

WAF also raised concerns about whether Pratt followed the company's collective bargaining agreement for hiring union personnel. *Id.*, ¶¶ 89–92. Although Pratt maintains she followed the correct hiring procedure, it is undisputed that WAF believed otherwise and that her hiring process angered union employees. *Id.* Pratt's contrary belief that she followed the collective bargaining agreement's procedures does not affect the analysis of "whether [WAF] believed it had a legitimate, non-discriminatory basis to terminate h[er]." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715–16 (7th Cir. 2017). And she does not cite any evidence "that

23

would allow for a reasonable inference that [WAF] did not have honest concerns about" her benefits mistakes and ability to follow the company's hiring protocol. *Id.* at 716.

Ignoring these facts, Pratt points to her December 2018 performance review, which said Pratt was "'good on the benefits side' of her job." App. Br. 13. She agrees, however, that same performance review "stated that managers did not trust her, and that she was considered divisive by the Utech report." *Id.* at 14. "In evaluating a summary judgment case," this Court "need not ignore the unflattering aspects of [an appellant's] performance evaluations," especially when the appellant "relies on those same evaluations to support h[er] assertion that [s]he was . . . performing adequately." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 493 n.1 (7th Cir. 2010). Rather, the Court "consider[s] the entire record" and "will not ignore facts in the record merely because they are unfavorable to [Pratt]." *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997). "[Pratt] gets the benefit of the doubt" on inferences "only if the record contains competent evidence on both sides of a factual question." *Id.* The passing remark that Pratt was "good" on benefits does not mean that she was otherwise performing up to WAF's legitimate

performance expectations or that she did not make the errors described above. Nor does it mean that she was immune from discipline, up to and including termination of employment. On the record presented—which includes undisputed evidence of legitimate performance and trust issues documented in two separate third-party investigations—no rational fact finder could conclude that Pratt's sex was the cause of her termination.

### 2.     Pratt submits no evidence of pretext on appeal.

Pratt's appeal brief makes no attempt to argue the above reasons for her termination create an inference of pretext or otherwise demonstrate pretext for sex discrimination. Instead, she argues "the concerns about the [Utech] report were pretext for *retaliation*" and "issues with Pratt's confidentiality were pretext for *retaliating* against Pratt." App. Br. 31 (emphases added). On this argument—her only pretext argument—no reasonable juror could therefore infer WAF's reasons for terminating Pratt were pretext for *sex discrimination.*

Pratt may reply that her retaliation pretext arguments apply equally to her discriminatory termination claims. Pretermitting that she forfeited such argument by failing to make it in her opening brief, where "the employer contends that the plaintiff's job performance was wanting,

25

the plaintiff must do more than dispute the validity of the employer's criticisms." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). The "only concern at the pretext stage is whether this defendant honestly remained dissatisfied with its employee's performance." *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001). Pratt presented no evidence that would cause a reasonable factfinder to question whether WAF honestly believed the consultants' reports and their own internal assessments. "[W]ithout proof of a lie," and there is no such proof here, "no inference of discriminatory motive can be drawn." *Id.* "[I]t is not enough for [Pratt] to show that [WAF's] explanation was based on an inaccurate assessment of [her] performance." *Id.* So, even assuming WAF and two independent consultants incorrectly assessed Pratt's abilities, that "does not shed light on whether [WAF] is lying about" its reliance on those internal and external assessments. *Id.*

### 3. The district court correctly found that no similarly situated employee outside of Pratt's protected class was treated more favorably than her.

A similarly situated employee is "someone who is directly comparable to [Pratt] in all material respects except for membership in the protected class." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d

1101, 1104 (7th Cir. 2012). On appeal, Pratt points to "other male managers who were identified in the Utech report [as being] comparable to Pratt, [because] they were around her level in the organization [and] they operated in the same reporting structure." App. Br. 35. She also claims that she and Boyd were similarly situated because they both reported to Jacobs and were evaluated on the same criteria by Jacobs. *Id.* No authority, obviously, holds this oversimplified contention is sufficient to qualify these unidentified "male managers" as comparators. And no record evidence shows that the alleged male managers "operated in the same reporting structure" or that Pratt and Boyd "were evaluated on the same criteria by Jacobs."

To allow for a meaningful comparison there must be enough common features to "eliminate confounding variables, such as differing roles, performance histories, or decisionmaking personnel, [so as to] isolate the critical independent variable," *i.e.*, Pratt's protected class. *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008) (citation omitted). Thus, to meet her burden under this element, Pratt must—at a minimum—identify a male employee with the same job and responsibilities that reported to the same supervisor, and who was

27

treated more favorably than Pratt. *Id.* Pratt has not done so, so the district court properly concluded that Pratt "failed to present evidence that any similarly situated employee was treated differently." R. 59 at 11.

## II. The district court correctly granted summary judgment on Pratt's discriminatory pay claim.

The *McDonnell Douglass* framework also applies to Pratt's pay discrimination claim. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Plaintiffs establish a prima facie case by showing they "(1) are members of a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) were subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 895. A plaintiff "fails in her attempts to show" a purported comparator is similarly situated when "neither [the comparator] held the same position as [the plaintiff], nor did they have similar job responsibilities. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006); *Downing v. Abbott Labs.*, 48 F.4th 793, 805 (7th

Cir. 2022) ("The two employees who are purportedly similarly situated must deal with the same supervisor").

The district court dismissed Pratt's pay discrimination claim because she "failed to identify any similarly situated employees outside the protected class who were treated more favorably than her as to compensation." R. 45 at 11. As in the district court, Pratt points to Emery Coonen, WAF's EHS Manager, as the only comparator for evaluating unequal pay. The district court, however, thoroughly distinguished Pratt's job as HR manager and Coonen's job as EHS manager and concluded "[t]he undisputed facts show that Mr. Coonen and Ms. Pratt had different job duties and reported to different supervisors." R. 45 at 11–13. In fact, Coonen held "a very different position" than Pratt. *Id.* at 12. Between the two, they "shared only two responsibilities out of the 15 essential functions of the HR Manager: [1] responding to OSHA if they visited the company and [2] attending meetings related to the company's worker's compensation plan, which only occurred up to five times a year." *Id.*

Pratt makes no attempt to grapple with the district court's analysis on appeal, devoting only two pages of argument to address this claim.

29

Instead, she contends the court completely ignored "that Pratt was literally doing Coonen's job for three months before he was hired."[6] App. Br. 36. That Pratt may have temporarily performed Coonen's job duties says nothing about why she should be paid the same as Coonen once she stopped performing those duties. Employers set pay rates based on a variety of criteria, including prior experience, certifications, and other credentials. Pratt's failure to show that she possessed the same experience, credentials, or other relevant criteria as Coonen further prevents any inference that Coonen's higher pay was the result of his sex, rather than a result of other nondiscriminatory factors. Accordingly, Pratt has failed to demonstrate a prima facie case with regard to her allegations of pay discrimination.

## III. The district court correctly granted summary judgment on Pratt's retaliation claim.

To defeat summary judgment on her Title VII retaliation claim, Pratt was required to offer evidence from which a reasonable jury could find that: (1) she engaged in an activity protected by the statute; (2) she

---

[6] Notably, the record evidence does not support Pratt's claim that she was "literally doing Coonen's job for three months before he was hired." Rather, Pratt's declaration states that she acted as the EHS manager, R. 37 ¶ 21, but does not describe any specific job duties she was performing while she held that role or how they compared to the job duties Coonen performed as EHS Manager.

30

suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). The district court correctly concluded that Pratt failed to satisfy the first and third elements of this claim. R. 45 at 13–18.

## A.   The district court applied the correct standard under Title VII.

In analyzing Pratt's retaliation claim, the district court recognized that Title VII's opposition clause protects an employee who opposes any practice made unlawful by Title VII. R. 45 at 15. The district court then explained, quoting *Crawford v. Metro. Gov. of Nashville & Davidson Cnty.*, 555 U.S. 271 (2009), that the term "oppose" "carries its ordinary meaning: [t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand." R. 45 at 15. The district court then stated, quoting this Court, that to be protected under the opposition clause, the person opposing the practice "must not only have a subjective (sincere, good faith) belief that [she] opposed an unlawful practice; [her] belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." R. 45 at 16 (*quoting Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707

31

(7th Cir. 2000)). The district court applied this standard here and all agree that this is a correct articulation of the standard. *See* Amicus Br. at 15 ("any protected opposition must be based on a good-faith, reasonable belief that the employment practice they oppose violates Title VII").[7]

### B. The district court correctly concluded that Pratt did not engage in protected activity.

#### 1. The district court correctly concluded that Pratt's February 2018 report about Boyd is not protected activity.

The district court held that Pratt's February 2018 report about Boyd is not protected activity under Title VII because Pratt could not have had an objectively reasonable belief that the conduct at issue—a single, isolated, and not unwelcome joke of a sexual nature—constituted sexual harassment. *See* R. 45 at 16–18. Pratt does not disagree. *See* App. Br. at 26 (recognizing that "the district court is correct that this incident alone may not rise to the level of conduct prohibited by Title VII").

Nor could Pratt cogently contend that any such belief that a single, isolated, and not unwelcome joke of a sexual nature constituted sexual

---

[7] Citations to the Brief of Amicus Curiae are "Amicus Br."

harassment was objectively reasonable. *See, e.g.*, *O'Leary*, 657 F.3d 625 at 631–32 (affirming summary judgment for defendant on retaliation claim, holding that report about a single instance of sexual remarks was not protected activity because it could not reasonably be understood to constitute sexual harassment that would be actionable under Title VII); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004); *see also Clark Cnty. Sch., Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir.1998) (holding that no reasonable person could believe that a poke to the buttocks constitutes sexual harassment because such conduct is too "tepid or intermittent or equivocal"). The district court recognized, and relied upon, this line of authority in correctly concluding that this report was not protected activity because any belief that a single, isolated, and not unwelcome joke of a sexual nature constituted sexual harassment was not objectively reasonable. *See* R. 45 at 16–18 (*citing O'Leary*, 657 F.3d at 631)). There is no basis for this Court to reach a different conclusion.[8]

---

[8] The *amicus* brief argues that the district court erred in articulating the standard for sexual harassment as requiring harassment that is "severe and pervasive" because the harassment need only be severe or pervasive. Amicus Br. at 9–10, 18–19. While *amicus* correctly articulates the standard, any "error" was harmless here because the conduct at issue "plainly was neither [severe or pervasive]: it involved a single instance of sexually-charged remarks

Moreover, Pratt's 2018 report was not protected activity because it fell squarely within her job duties. There is no dispute that a core function of Pratt's job was to investigate employee complaints of discrimination and harassment. R. 39 at ¶ 16. While Pratt asserts in her brief that she "made protected reports both inside and outside of her job duties," App. Br. at 26, Pratt concedes that, as to the February 2018 report concerning Boyd, she "authored [the] report in the ordinary course of her work[.]" App. Br. at 32. Consequently, with respect to this report, Pratt did not take any *personal* oppositional step to any practice made unlawful by Title VII, as the statute requires. 42 U.S.C. § 2000e-3(a); *Crawford v. Metro. Gov. of Nashville & Davidson Cnty.*, 555 U.S. 271, 276–78 (2009); *O'Leary*, 657 F.3d at 631 (a plaintiff must show "that [s]he took some step in opposition to a form of discrimination that the statute prohibits"); *Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015); *Patterson v. Georgia Pacific, LLC*, 38 F. 4th 1336, 1347 (11th Cir. 2022).

---

which, however imprudent they may have been, were relatively tame." *O'Leary*, 657 F.3d at 631. Thus, there is no basis to reverse the district court's Order on this basis. 28 U.S.C. § 2111; *see also O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018) ("We may affirm on any ground supported in the record so long as it was adequately addressed below and the plaintiffs had an opportunity to contest the issue").

### 2.    The district court correctly concluded that Pratt's March 7, 2019, email is not protected activity.

The district court held that Pratt's March 7, 2019, email, in which she references her February 2018 report concerning Boyd, "was not itself protected activity because, as explained above, the underlying complained-of activity did not constitute harassment, nor did she take any step to oppose discrimination with her email." R. 45 at 17. The district court's holding is correct as a matter of law.

While Pratt *generally* referenced protected activity and retaliation in the March 7, 2019, email, she specifically referenced only the February 2018 investigation ("I was participating in a protected activity in February of 2018, and feel I have suffered retaliation on a repeated basis as a result"). R. 39 at ¶¶ 85–86. For the reasons explained above, Pratt's February 2018 report does not constitute protected activity under Title VII. And because the underlying activity (*i.e.*, investigating an employee complaint about a single isolated joke) is not protected, complaining about alleged retaliation for such activity is likewise not protected activity. *See Skiba v. Ill. C. RR. Co.*, 884 F.3d 708, 718 (7th Cir. 2018); *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2017); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012).

35

Moreover, the March 7 email itself does not constitute protected activity because, as the district court held, nowhere in the email did Pratt take "some step in opposition to a form of discrimination that the statute prohibits." *O'Leary*, 657 F.3d at 631. Rather, she raised concerns about such topics as her recent performance evaluation, not receiving a bonus, staffing in the human resources department, employees gossiping at work, and not being part of the leadership team or union negotiations. R. 39 at ¶¶ 85–86. She did not claim that any of these issues were related to gender or any other protected activity. *Id.* The law is clear that such generalized grievances do not rise to the level of protected activity under Title VII. *See Swinney v. Ill. State Police*, 332 Fed. App'x 316, 318 (7th Cir. 2009) ("An employee does not engage in protected activity merely by complaining of being 'picked on' unless that complaint makes clear that he or she is being mistreated because of sex or gender."); *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) (affirming summary judgment, finding plaintiff did not engage in protected activity where her complaints "concerned a general displeasure with being paid less than her co-workers").

36

While Pratt appears to take issue with the district court's holding that the March 7 email was not protected activity, she does so only generally and fails to offer any developed argument to support her contention. *See* App. Br. at 27. This alone dooms her argument. *See United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (undeveloped argument not supported by legal authority is waived); *Crespo v. Colvin,* 824 F.3d 667, 674 (7th Cir. 2016) (perfunctory and undeveloped arguments are waived); *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008).

Even considering Pratt's undeveloped arguments on this point, the result is the same. First, Pratt accuses the district court of simply "ignoring" Pratt's March 7, 2019, email. App. Br. at 16. This unfounded accusation runs headlong into reality. As explained above, the district court considered Pratt's March 7 email and Pratt's argument, and concluded that the March 7 email was not protected activity. R. 45 at 17. Pratt's only other "argument" on this point is to summarily conclude that her March 7 email "clearly and explicitly makes protected reports of discriminatory conduct." App. Br. at 14. "Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer

37

was four: calling a tail a leg does not make it one." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 637 (7th Cir. 2011). The dictum applies with equal force here. Pratt's repeated (but unsupported) claim that her March 7 email "makes protected reports of discriminatory conduct" is belied by the document itself. R. 45 at 17; R. 33-1 at 215–18; R. 39 at ¶ 85. As the district court correctly found, nowhere in the email does Pratt expressly refer to any alleged protected activity other than her February 2018 report. R. 45 at 5, 17. Consequently, this Court should reject Pratt's argument that her March 7, 2019, email constituted protected activity.

### 3. The sham affidavit rule bars the other alleged protected activity cited by Pratt.

Outside of the February 2018 report and March 7, 2019 email discussed above, in arguing that she engaged in protected activity, Pratt identifies three general instances of alleged protected activity in her brief. First, Pratt identifies several interactions between Boyd and Rabitz, including that Boyd called Rabitz a "bitch" and intentionally antagonized Rabitz, and contends that "Pratt reported that Boyd undercut and disrespected women in the workplace regularly." App. Br. at 27. Second, Pratt claims that she "made numerous protected reports

38

about the conduct of Tom Culp." (*Id.*). Third, Pratt appears to argue that she engaged in protected activity when she reported that Tom Behnke called her a "cunt" and a "bitch." *Id.* at 12, 25. As WAF explained to the district court, each of these instances of alleged protected activity suffers from the same fatal infirmity: it is barred by the sham affidavit rule.

This Court has made clear that a party may not escape summary judgment by creating issues of fact through a declaration that is inconsistent with prior deposition testimony. *See Maldonado v. U.S. Bank,* 186 F.3d 759, 769 (7th Cir. 1999); *Babrocky v. Jewel Food Co. & Retail Meatcutters Union,* 773 F.2d 857, 861 (7th Cir. 1985). This is precisely what Pratt attempts to do here. Through her Proposed Facts (R. 38), which rely entirely on her declaration, Pratt seeks to contradict and impermissibly expand her deposition testimony as to her alleged protected activity, in contravention of settled Seventh Circuit law.

Pratt was asked during her deposition to identify all instances of protected activity, specifically including all instances in which she made an allegedly protected report to Jacobs. As to the alleged protected activity identified in her brief related to Boyd and Rabitz, Culp, and Behnke, Pratt failed to identify these incidents, nor did she submit an

39

errata sheet to amend or supplement her deposition testimony. *See* R. 44 at ¶¶ 25, 29, 34, 41, 50, and 54.[9] Consequently, Pratt may not rely on these purported facts to establish a genuine dispute as to a material fact or avoid summary judgment. *See Cyriac v. Washington Group, Inc.,* 766 F.3d 735 (7th Cir. 2014); *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 687–88 (7th Cir. 2008); *Amadio v. Ford Motor Company,* 238 F.3d 919, 925–26 (7th Cir. 2001); *Miller v. A.H. Robins Company, Inc.,* 766 F.2d 1102, 1105 (7th Cir. 1985).

### 4.    The district court did not create a manager rule.

To read the *amicus* brief, one would think that the district court created a new "manager rule" holding that Human Resources employees are not protected by Title VII and can never engage in protected activity.[10] *See* Amicus Br. at 10–17. But *amicus* attacks a straw-man of its own creation because the district court created no new "manager rule," did not create a "higher standard," and did not hold that Human

---

[9] A portion of WAF's responses to Pratt's Proposed Findings of Fact in the District Court are off by one paragraph number. So WAF's responses identified here relate to paragraphs 26, 30, 35, 42, 51, and 55 in R. 38.

[10] The arguments asserted in the *amicus* brief concerning statutory interpretation are not entitled to any deference. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

Resources employees are not protected by Title VII and can never engage in protected activity. Indeed, the term "manager rule" appears nowhere in the district court's Order.

Rather, the district court merely noted, quoting a Second Circuit decision, that "[t]o the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII." (Dkt. 45 at 15–16 (quoting *Littlejohn*, 795 F.3d at 318). Nothing about this statement is inconsistent with analyzing whether an individual has engaged in the opposition required under Title VII, which, necessarily, requires consideration of the specific facts and circumstances. *See Crawford v. Metro. Gov. of Nashville & Davidson Cnty.*, 555 U.S. 271, 276–78 (2009); *Patterson*, 38 F. 4th at 1347 ("Whether an employee has opposed an unlawful employment practice depends on whether the employee's activity would be understood as opposition in ordinary discourse and in how we would naturally use the word") (citation and internal quotation marks omitted); *see also* Amicus

41

Br. at 16 ("Merely recording the receipt of a complaint likely does not meet that standard").

But *amicus's* argument fails for an even more fundamental reason. The district court concluded that Pratt failed to establish that she engaged in protected activity ***not*** because she was an HR manager, but because her belief that she was opposing discrimination prohibited by Title VII was not objectively reasonable—a requirement *amicus* acknowledges is necessary under Title VII. *See* R. 45 at 13–18; Amicus Br. at 15). In other words, the district court's conclusion that Pratt did not engage in protected activity had nothing to do with her job as a Human Resources manager. Consequently, *amicus's* misguided focus on an alleged heightened standard applied by the district court is not only wrong, it is also irrelevant to Pratt's appeal because the "heightened standard" about which amicus complains had no impact on the district court's judgment. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002); *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (error is harmless where it does not impact the outcome); 28 U.S.C. § 2111 ("[T]he court shall give judgment after an examination of the

42

record without regard to errors or defects which do not affect the substantial rights of the parties").

### 5. The *amicus* brief's focus on a hostile work environment standard is a red-herring because Pratt has waived any such argument.

*Amicus* devotes nearly half of its brief to arguing that the district court "erred in describing what Title VII requires for an employee to oppose a hostile work environment." Amicus Br. at 17–26. The problem for *amicus*—one that proves fatal—is that Pratt never argued to the district court that her alleged protected activity related to an alleged hostile work environment.[11] *See* R. 36. In fact, nowhere in her summary judgment opposition brief does Pratt even use the phrase "hostile work environment." *Id.* Nor does Pratt's Opening Brief argue that the district court applied the wrong standard in connection with analyzing a hostile work environment. Indeed, here too, Pratt's Opening Brief does not even use the phrase "hostile work environment." *Id.* Rather, it is clear from Pratt's Opening Brief that her argument is *not* that she opposed a "hostile work environment," but that she opposed discrimination. *See,*

---

[11] Pratt's complaint included a hostile work environment claim, which the District Court dismissed on WAF's motion to dismiss. R. 18.

*e.g.*, App. Br. at 14 (alleging "reports of discriminatory conduct"); *id.* at 23 (arguing that the "record is replete with examples of Pratt opposing discrimination"); *id.* at 24 ("Pratt's reporting of their discriminatory misconduct"); *id.* at 2 (discussing discrimination).

In any event, because Pratt did not make any argument to the district court concerning the appropriate standard for evaluating a "hostile work environment" retaliation claim, and makes no argument to this Court concerning the appropriate standard for evaluating a "hostile work environment" retaliation claim in her Opening Brief, Pratt has waived the argument. *See Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive a non-jurisdictional issue or argument in many ways, such as by failing to raise the issue or argument in the district court, either at all or in a timely fashion, by failing to raise it at all in the party's opening brief on appeal, by failing to present a developed argument on appeal that engages with the reasoning of the district court"); *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019); *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) ("We have repeatedly stated that a party may not raise an issue for the first time on appeal.

44

Consequently, a party who fails to adequately present an issue to the district court has waived the issue for purposes of appeal.") (citation and internal quotation marks omitted); *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012); *Fednav Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 841 (7th Cir. 2010) ("[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms"); *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal").

Moreover, where—as here—a party has waived an argument, the argument may not be resuscitated by *amicus. See McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) ("[W]e are unable to consider issues argued in the *amicus* brief that have not been preserved or advanced by [appellant]"); *Just. v. CSX Transp., Inc.*, 908 F.2d 119, 125 (7th Cir. 1990) (amicus may not raise arguments on appeal that party has waived);

45

*Charles v. Daley*, 846 F.2d 1057, 1059, n. 1 (7th Cir. 1988) (same). Consequently, this Court need not—and should not—consider the argument advanced by *amicus* here that the district court "erred in describing what Title VII requires for an employee to oppose a hostile work environment."

Even if the Court considers *amicus's* argument, Pratt still cannot establish that she engaged in protected activity. To start, as explained above, neither the February 2018 report about Boyd nor Pratt's March 7, 2019, email constitute protected activity. Further, and as also explained above, all of the other alleged protected activity on which both Pratt and *amicus* focus is barred by the sham affidavit rule. Outside of the February 2018 report, the March 7 email, and the alleged protected activity barred by the sham affidavit rule, Pratt is left only with run-of-the-mill workplace gripes (only a few of which she even mentions in passing in her brief). For instance, Pratt mentions in passing—but does not reference in her argument—a single instance where an employee "flipped off" another employee and an occasion when an employee recruited temporary staff directly, rather than going through Human Resources. App. Br. at 9.

46

As *amicus* concedes, to establish protected activity, a plaintiff must establish, at a minimum, a reasonable belief that they are opposing unlawful conduct. Amicus Br. at 35; *O'Leary*, 657 F.3d at 631; *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019) ("[P]laintiff must not only have a subjective (sincere, good faith) belief that [s]he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII") (citation and internal quotations omitted). Pratt cannot satisfy this standard here because Pratt's other alleged protected activity involved prosaic run-of-mill workplace grievances, the type of petty slights not protected by Title VII. *See Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014)*, overruled on other grounds by Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016); *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7thCir. 2009).

Pratt herself concedes that "these incidents [an employee flipping off another employee and an employee recruiting temporary staff directly] may not rise to the level of conduct prohibited by Title VII," App. Br. at 9, which makes sense because the law is clear that such generalized complaints do not rise to the level of protected activity under

47

Title VII. *Smith,* 674 F.3d at 658 (general complaints unrelated to discrimination based on a protected category do not constitute protected activity); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (recognizing that a "complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class" and "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient").

Nor do these run-of-the-mill workplace gripes, whether considered separately or together—and to be sure, the events here involved different pairs of employees—establish a hostile work environment "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Rather, even if these isolated incidents were tied to gender (or some other protected category)—and there is no evidence that they were—distinct and isolated incidents like those identified by Pratt here fall far short of the "severe or pervasive" standard required for actionable harassment. *See, e.g.*, *O'Leary*, 657 F.3d at 631–32; *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) ("The occasional vulgar banter, tinged with sexual

48

innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable" and "minor or isolated incidents are generally insufficient to rise to the level of objectively offensive conduct"); *see also Clark Cnty. Sch., Dist. v. Breeden*, 532 U.S. 268, 271 (2001). Because the district court correctly concluded that Pratt did not engage in protected activity, the Court should affirm the district court's Order granting summary judgment for WAF.

### C. The district court correctly concluded that there is no causal connection between Pratt's alleged protected activity and the adverse employment actions.

#### 1. There is no genuine dispute that Jacobs made the decision to terminate Pratt's employment before March 7, 2019.

In her Opening Brief, Pratt argues that she has "direct evidence of retaliation" because her employment was terminated on March 14, 2019, one week after her March 7, 2019, email. App. Br. at 28–29. The district court did not squarely address this argument because it held that Pratt's March 7 email was not protected activity. *See* R. 45 at 17–18. For the reasons explained above, this Court should do the same here. Even if the Court reaches the merits of this argument, however, the argument does not withstand scrutiny.

In its summary judgment brief, WAF explained that even if Pratt's March 7 email *could be* considered protected activity, it could not, as a matter of law and logic, be causally connected to the termination of her employment because Jacobs made the decision to terminate Pratt's employment **before** he received that email. R. 32 at ¶¶ 93–94. The support for these facts is Jacobs' declaration, which states: "I made the decision to terminate Pratt's employment prior to March 7, 2019" and "I requested approval from the Board of Directors to terminate Pratt's employment prior to March 7, 2019." R. 34 at ¶¶ 14–15. Unable to refute these facts, Pratt argued below, and will likely argue here, that "Jacobs' recollection as to timing differed at his deposition." R. 39 at ¶¶ 93–94. It did not. Nothing in Jacobs' deposition testimony is in any way inconsistent with Jacobs' declaration. Indeed, Pratt's counsel never asked Jacobs anything about the timing of the termination decision and the cited deposition testimony does not discuss the timing of that decision at all. On appeal, Pratt presents a new twist on this argument, contending that "WAF has produced no documentation to support that Pratt's termination was being considered prior to March 7, 2019[.]" App. Br. at 29. This argument is equally wide of the mark.

An assertion of fact in a sworn declarations is competent evidence on which summary judgment can be granted. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Igasaki*, 988 F.3d at 955; *see also McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017); *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). At bottom, the evidence is undisputed that Jacobs made the decision to terminate Pratt's employment ***before*** he received the March 7, 2019, email. This is fatal to Pratt's retaliation claim. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Reynolds v. Extendicare Health Servs., Inc.*, 257 Fed. App'x. 914, 921 (6th Cir. 2007) (no causal connection in Title VII retaliation case because even though adverse action occurred after protected activity, the decision was made prior to protected activity); *see also Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (speculation cannot create a genuine issue of material fact). Because Pratt focuses entirely on the March 7 email in arguing causation, the Court should

51

affirm the district court's Order granting summary judgment for WAF on this basis alone. *See O'Brien*, 900 F.3d at 928 (7th Cir. 2018).

### 2. Pratt has no evidence of a causal connection between any other alleged protected activity and the termination of her employment.

Again, Pratt's causation argument focuses solely on the alleged "suspicious timing" between her March 7 email and the March 14 termination of her employment. *See* App. Br. at 28–29. By failing to meaningfully develop any causation argument as to any other alleged protected activity, Pratt has waived any such argument. *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) ("We have made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority are waived"); *Bradley*, 59 F.4th at 897 (party waives argument by failing to present a developed argument on appeal). Even if Pratt had argued that the termination of her employment was caused by her earlier alleged protected activity, Pratt's causation argument still fails.

To prevail on a retaliation claim requires "'proof that the desire to retaliate was the but-for cause of the challenged employment action.'" *Ferrill*, 860 F.3d at 501 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*,

570 U.S. 338, 351 (2013)). Here, the district court found that there is no evidence of any retaliatory motive and that retaliation was not the *but-for* cause of Pratt's termination. R. 45 at 17–18. The district court recognized that Pratt's alleged protected activity related to the February 2018 Boyd report occurred more than a year before the termination of Pratt's employment and that such a substantial time lapse is "counter-evidence of any causal connection." R. 45 at 18 (citing *Filipovic v. K & R Express. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999). The district court's holding is well established by this Court. *See Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 608 (7th Cir. 2022); *Turner v. The Saloon, Ltd.,* 595 F.3d 679, 687 (7th Cir. 2010) (no inference of causation where more than six months passed between protected activity and termination); *Tomanovich*, 457 F.3d at 665 (same for four month gap); *Salvato v. Ill. Dep't. of Human Rights*, 155 F.3d 922, 925 (7th Cir. 1998) (same for six month gap); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (same for five month gap); *Hughes v. Derwinski,* 967 F.2d 1168, 1174 (7th Cir. 1992) (same for four month gap). Pratt fails to advance any argument to the contrary in her Opening Brief.

53

Further, the district court concluded that there is no evidence that Jacobs—who made the decision to terminate Pratt's employment—took issue with Pratt's alleged protected activity. R. 45 at 17–18. Pratt's alleged protected activity centers almost exclusively on *Boyd* and has nothing to do with Jacobs. R. 39 at ¶¶ 87–88. There is no reason—and certainly no evidence to show—that Jacobs took issue or was somehow angered by Pratt investigating Boyd. *See Igasaki,* 988 F.3d at 956; *Springer*, 518 F.3d at 484 (speculation about retaliatory motives cannot create a genuine issue of material fact). Indeed, there is no evidence at all suggesting that Boyd and Jacobs were close in any way. And Boyd was not involved at all in the decision to terminate Pratt's employment. R. 45 at 17–18; R. 39 at ¶¶ 93–94.[12] The ultimate question is: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the adverse employment action? *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021)). Here, as the district court held, the clear answer is no. Because Pratt offers no reason to depart from the district court's holding, this Court should

---

[12] Pratt did not allege or argue to the district court a "cat's paw" theory and does not do so here. *See Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 918 (7th Cir. 2007) (discussing cat's paw theory of liability).

affirm the district court's Order granting summary judgment for WAF. *See Igasaki*, 988 F.3d at 958–61.

### D.   WAF had legitimate reasons for terminating Pratt's employment and there is no evidence of pretext.

For the same reasons stated in Argument Section I.B.2 above, WAF articulated legitimate reasons for terminating Pratt's employment and there is no evidence of pretext. As the district court correctly concluded, and as the evidence indisputably shows, Pratt suffered from a host of ongoing performance issues. R. 45 at 2–5. Thus, even if Pratt could establish a prima facie case—which she cannot—WAF is still entitled to summary judgment on Pratt's retaliation claim.

### CONCLUSION

For the foregoing reasons, WAF asks that the Court affirm the district court's summary judgment order and the resulting judgment.

Respectfully submitted this 19th day of November, 2024.

/s/ *Jennifer L. Ciralsky*
Jennifer L. Ciralsky,
jciralsky@littler.com
Michael S. Yellin
myellin@littler.com

Attorneys for Defendant-Appellee
Wisconsin Aluminum Foundry

LITTLER MENDELSON, P.C.
111 East Kilbourn Ave. Suite 1000
Milwaukee, WI  53202
Telephone:  414.291.5536
Facsimile: 414.291.5526

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Appellees, furnishes the following in compliance with Fed. R. App. P. 32(a)(7):

I hereby certify that this brief conforms to the type-volume limitations contained in Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) for a brief produced with a proportionally spaced font. The length of this brief is 11,560 words, accounting for all material under Fed. R. App. P. 32(f) counting toward the word limitations.

Dated this this 19th day of November, 2024.

*/s/ Jennifer L. Ciralsky*
Jennifer L. Ciralsky

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2024, I caused the foregoing to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that two bound copies of the brief were served upon Plaintiff-Appellant via U.S. mail, postage prepaid, at the address listed below:

ALAN C. OLSON AND ASSOCIATES, S.C.
Nicholas O. Yurk
2880 S. Moorland Rd.
New Berlin,WI 53207


*/s/ Jennifer L. Ciralsky*
Jennifer L. Ciralsky

58