**No. 24-1901**

---

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

DEBRA PRATT,

      Plaintiff-Appellant,

    v.

WISCONSIN ALUMINUM FOUNDRY,

      Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Wisconsin

Case No. 1:22-cv-00568-WCG

The Honorable William C. Griesbach,
Presiding

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT, DEBRA PRATT

---

ALAN C. OLSON & ASSOCIATES, S.C.
Nicholas O. Yurk
2880 S. Moorland Rd.
New Berlin, WI 53207
(262) 785-9606

Attorneys for Appellant Debra Pratt

December 17, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................. 3

ARGUMENT.................................................................................................... 5

I.    Pratt's sex discrimination claim should be allowed to proceed to trial.  6

   A.    Pratt did not waive her Title VII discriminatory discharge claim. .. 6

   B.    Pratt established a prima facie case of sex-based discrimination. ... 8

   C.    Pratt showed evidence of pretext.......................................................... 12

   D.    Pratt showed similarly situated comparators. ................................... 16

II.    Pratt's discriminatory pay claim was valid. ......................................... 18

III.    Pratt was retaliated against for Title VII-protected reporting............ 20

   A.    Pratt's affidavit is in harmony with her deposition testimony. ..... 20

   B.    Pratt's February 2018 report was a protected report....................... 23

   C.    Pratt's March 7, 2019 email was a protected report. ....................... 26

   D.    Jacobs' bare assertion on timing does not undercut Pratt's claim.  27

CONCLUSION ............................................................................................... 29

CERTIFICATE OF COMPLIANCE ................................................................ 31

CERTIFICATE OF SERVICE ......................................................................... 31

## TABLE OF AUTHORITIES

*Amadio v. Ford Motor Co.*,
238 F.3d 919 (7th Cir. 2001)........................................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................28

*Boumehdi v. Plastag Holdings, LLC*,
489 F.3d 781 (7th Cir. 2007).....................................................................28, 29

*Coleman v. Donahoe*,
667 F.3d 835 (7th Cir. 2012)......................................................................16, 17

*Crawford v. Indiana Harbor Belt R.R.*,
461 F.3d 844 (7th Cir. 2006)........................................................................17

*David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*,
846 F.3d 216 (7th Cir. 2017)........................................................................18

*Foster v. PNC Bank, N.A.*,
52 F.4th 315 (7th Cir. 2022).........................................................................28

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)........................................................................................24

*Kralman v. Ill. Dep't of Veterans' Affs.*,
23 F.3d 150 (7th Cir. 1994)..........................................................................13

*McDonnell Douglas v. Green*,
411 U.S. 792 (1973)........................................................................................6

*Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*,
83 F.3d 833 (7th Cir. 1996)..........................................................................13

*Montgomery v. Am. Airlines, Inc.*,
626 F.3d 382 (7th Cir. 2010)........................................................................27

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)......................................................................................25

3

*Oest v. Ill. Dept. Corr.*,
  240 F.3d 605 (7th Cir. 2001)…...............................................................................12

*O'Neal v. City of New Albany*,
293 F.3d 998 (7th Cir. 2002)..................................................................................5

*Perdomo v. Browner*,
67 F.3d 140 (7th Cir. 1995)..................................................................................5, 9

*Poullard v. McDonald*,
829 F.3d 844 (7th Cir. 2016)..................................................................................8

*Russell v. Acme-Evans Co.*,
51 F.3d 64 (7th Cir. 1995)..............................................................................21, 28

## ARGUMENT

Wisconsin Aluminum Foundry's ("WAF") brief focuses on the legitimacy of its reasons for discharging Pratt, while ignoring the contradicting evidence in the record. When evidence put forward by an employee calls an employer's truthfulness into question, summary judgment is precluded "[b]ecause a fact-finder may infer intentional discrimination from an employer's untruthfulness." *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). If a trier of fact can reasonably infer that the employer did not believe its proffered reasons and discrimination was the real reason for the employee's discharge, summary judgement is inappropriate. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002).

In this case, Pratt has plainly put forward reasons to believe most, if not all, of the reasons which underpinned the decision to fire Pratt were motivated by discrimination or retaliation. Furthermore, Pratt has shown that at least one of the purported reasons for her discharge was plainly untrue. This, combined with Pratt's prima facie showing of discrimination and retaliation, plus the compelling mosaic of factors which suggest discrimination and retaliation were the reason for the discharge, must result in the trial court's summary judgment being reversed.

5

## I.    Pratt's sex discrimination claim should be allowed to proceed to trial.

WAF argues that the trial court correctly granted summary judgment on Pratt's sex-discrimination claim because Pratt waived her sex-based discrimination claim, because Pratt did not establish a prima facie case of sex-based discrimination, and because Pratt failed to show evidence of pretext in WAF's stated reasons for Pratt's discharge. These contentions are not supported by the record or relevant case law.

Pratt plainly did not waive her sex-based discrimination claim, and properly established disputes of fact related to the contested elements of her prima facie case and WAF's pretextual reasons for her termination under the *McDonnell Douglas* framework. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Because there are reasonable factual disputes regarding the truth of WAF's purported reasons for Pratt's termination, summary judgment was inappropriate.

### A.    Pratt did not waive her Title VII discriminatory discharge claim.

Despite devoting a third of her summary judgment brief to arguing she was fired on the basis of her sex, WAF argues that Pratt waived her Title VII sex-discrimination claim. Neither WAF nor the trial court explain how Pratt failed to argue she was fired on the basis of her sex. *See generally* R. 36

6

at 3-9 ("Pratt was disciplined and fired for the same issues that her male peers had without consequence.").

In her brief, Pratt argued she established a prima facie case of sex discrimination, argued she identified numerous male comparators for the purposes of showing sex discrimination, and argued that WAF failed to show a legitimate reason for firing her because her termination was motivated by her sex. *See id*. The record is clear Pratt argued that WAF discriminated against her on the basis of her sex.

WAF further argues that Pratt's contention that her "sex-based discrimination [claim] is essentially an argument in the alternative to her retaliation claim" was made for the first time on appeal and is an "eleventh-hour attempt to bootstrap her retaliation arguments to sex-discrimination arguments." As a factual matter, this is false—Pratt explicitly made this argument to the trial court. *See* R. 36 at 6-7 ("Each other employee discussed in the Utech report, all of whom are male, still received a performance evaluation sufficient to earn a bonus in 2018 … To the extent the Utech report was actually the source of Pratt's negative review, the fact that WAF penalized Pratt for the report but no other male managers is suggestive of sex-based discrimination."). The record clearly demonstrates that Pratt

7

argued her sex-based discrimination and retaliation claims are related on summary judgment.

Finally, WAF cites *Poullard v. McDonald*, 829 F.3d 844 (7th Cir. 2016), to argue Pratt is not allowed to tie her sex-based discrimination claims to her retaliation claims. While *Poullard* is correct that a brief which simply uses the phrase "race/sex discrimination" while only arguing the issue of race discrimination is insufficient to maintain a sex discrimination claim on appeal, Pratt's brief opposing summary judgment includes a lengthy and separate discussion on the topic of sex-based discrimination. *Compare* R. 36 at 3-9 (discussing sex-based discrimination) *with* R. 36 at 11-17 (discussing retaliation). While there is overlap between the sex-based discrimination and retaliation claims, that overlap is intentional as those claims are related, and issues such addressing how WAF's legitimate performance expectations were pretext are the same for both claims.

### B.    Pratt established a prima facie case of sex-based discrimination.

WAF argues that Pratt failed to establish a prima facie case of sex-based discrimination because Pratt was allegedly not meeting WAF's legitimate performance expectations.

As an initial matter, all of the alleged performance issues which WAF claims led to Pratt's termination occurred many months before her

termination, while no adverse action was taken until Pratt made it clear she felt she was being retaliated against for her protected reporting. *See* R. 38, ¶¶ 57-62. Furthermore, Pratt established disputes of fact sufficient to call each of the alleged performance issues into question, meaning they are not legitimate performance expectations but evidence of pretext itself. *See Perdomo*, 67 F.3d at 145.

The situation involving Pratt's report that Boyd was sexually harassing a coworking in February of 2018 is telling. WAF argues Pratt's performance was deficient with regard to the handling of confidential documents in this situation because Pratt was alleged to have left a document on the printer in the HR office, while Rick Redeker, an employee at a similar level to Pratt in the organization, either took that document off the HR office printer, or took the document off Pratt's desk, and showed multiple other employees the information before taking it to his supervisor. R. 37, ¶¶ 37-38. Pratt was punished for her "confidentiality" issues, while Redeker was not, despite being obviously more culpable. *Id.*[1] WAF's alleged

---

[1]    WAF argues Pratt's failure to dispute that Hartwig and Redeker said she left the documents on the printer means that she waived the argument that Pratt credibly accused Redeker of stealing the documents from her desk. Indeed, the Hartwig report itself includes Pratt's accusation, and Pratt's affidavit confirms that Pratt left the document on

performance concerns with Pratt are pretext rather than a legitimate performance expectation because they are not "legitimate"—WAF plainly used subjective criteria to punish Pratt for reporting her concerns about sex-based harassment.

Similarly, WAF's vague allegations that Pratt lacked the trust of employees cannot support summary judgment in its favor, because the employee trust issues were the result of Title VII-prohibited retaliation. Pratt directly addressed this issue in her deposition, her affidavit, her proposed findings of fact, and her brief—"a lack of trust in the organization [for Pratt], are simply veiled references to retaliation against Pratt for opposing discrimination. Pratt had difficulties with employee trust at WAF because WAF managers, including Eugene Boyd, explicitly told WAF employees not to trust her." *See, e.g.*, R. 38, ¶¶ 62-63. Boyd did this "in retaliation for my reporting of discriminatory and harassing conduct." R. 37, ¶ 57. Furthermore, the source of the information regarding the lack of trust, the Utech report, was similarly critical of all managers discussed in it. R. 33-1,

---

her desk, not on her printer. *See* R. 37, ¶ 37-39. WAF's citation to local rules is irrelevant here because the issue was plainly disputed.

10

Pratt Dep. Ex. 18 at p. 195-205.[2] Despite being similarly or more critical of others, the Utech report was only used to punish Pratt.

Finally, WAF cites issues with employee benefits which occurred in early 2018 as leading to her termination in March of 2019. These issues are disputed,[3] and there is simply no reason to believe they were related to WAF's decision to fire Pratt fifteen months later when Pratt's manager specifically noted those issues as being Pratt's *strength* in December of 2018. R. 33-1, Pratt Dep. Ex. 21, p. 207. WAF cannot defeat Pratt's prima facie case by alleging she had job performance issues in an area WAF specifically cited as Pratt's strength. *See* R. 33-1, Pratt Dep. Ex. 21, p. 207.

---

[2]     WAF criticizes Pratt's lack of citations for contentions such as the Utech report was "uniformly similar in negativity and severity" towards Pratt's male peers and "the Utech report is generally critical of all managers discussed in it." To the extent it was unclear, these arguments are derived directly from the Utech report. *See generally*, R. 33-1, Pratt Dep. Ex. 18, p. 195-205.

[3]     WAF claims Pratt's job performance issues on employee benefits were undisputed, but they were plainly disputed by Jacobs' own contemporaneous documentation of Pratt's strength in this area. R. 33-1, Pratt Dep. Ex. 21, p. 207. Pratt did not need to aver she had positive performance regarding employee benefits when Jacobs wrote it in her review.

An employer's allegation of a performance expectation must be legitimate to defeat a prima facie case. *See, e.g., Oest v. Ill. Dept. Corr.*, 240 F.3d 605, 612 n.3 (7th Cir. 2001). A reasonable factfinder could disbelieve any and all of WAF's performance concerns about Pratt were legitimate, because they were false or motivated by discriminatory or retaliatory animus and because Pratt's manager knew they were false or impermissibly motivated.

In sum, Pratt is not simply alleging her performance issues were not that bad, she is alleging she did not have performance issues and the alleged performance issues were transparently pretext for unlawful discrimination and retaliation.

### C.    Pratt showed evidence of pretext.

WAF argues Pratt failed to argue WAF's actions were pretext for unlawful sex-based discrimination, rather than retaliation, and that Pratt presented no evidence that its proffered motives were untrue. WAF is wrong on both counts as a matter of fact and law. Pratt's evidence that WAF's proffered motives were untrue is evidence of pretext itself. Pratt specifically argued that WAF's alleged reliance on the Utech report was pretext for sex-based discrimination, because the Utech report had similar negative feedback for all of Pratt's male peers who, instead of being fired,

12

were given bonuses for their 2018 performance. See R. 38, ¶¶ 22-23; R. 33-1, Pratt Dep. Ex. 18 at p. 202-03; R. 33-2 at 65.

"A pretext, in employment law, is a 'phony reason' that the employer offers for engaging in discriminatory conduct." *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996). "A plaintiff can prove that an employer's proffered reasons for an employment decision are pretextual by one of two methods: (1) by showing that a discriminatory reason more likely than not motivated the employer . . . or (2) that the employer's proffered explanation is unworthy of credence." *Kralman v. Ill. Dep't of Veterans' Affs.*, 23 F.3d 150, 156-57 (7th Cir. 1994).

WAF draws the distinction between pretext for sex-based discrimination and pretext for retaliation that does not exist in the context of Title VII. Pretext is the "phony reason" for the discharge, whereas the actual reason for the discharge is established by Pratt's prima facie case. *See Mills*, 83 F.3d at 845.

Pratt is able to show that WAF lied about the reasons she was fired and is able to cast doubt that any of the allegations made against her were true. *See infra* Sec. I.B. Furthermore, to the extent WAF's purported reasons for Pratt's discharge were true or had some element of truthfulness, they

13

were either directly tied to discrimination or retaliation, and WAF knew this to be the case. *See infra* Sec. I.B. These are clear examples of pretext.

For example, WAF points to the confidential documents issue as a reason for Pratt's discharge but fails to acknowledge the "confidential document" was itself a protected report of sex-based harassment.[4] A reasonable fact-finder could certainly determine that WAF's concern about confidentiality in this situation was pretext for retaliation against Pratt for reporting the situation—first, because there is a dispute of fact as to whether Pratt actually mishandled the document, second, because other employees clearly mishandled the documents to a greater degree but were not punished or disciplined, and third, because Pratt was fired more than a year after this incident occurred without any additional allegations of any mishandling of any confidential documents.

WAF also argues that Pratt failed to dispute that WAF did not know its reasons for Pratt's discharge were false or based on retaliatory motives. This is obviously untrue. For example, Pratt averred and testified that she

---

[4]     WAF argues this single instance of sex-based harassment is not sufficient to trigger Title VII retaliation protections, and this argument is addressed in Sec. III.B herein. Regardless, it is clear that the issue directly ties to a report of sex-based harassment regardless of whether that single report triggers Title VII protections.

directly reported to Jacobs that Boyd and his direct reports were coaching their direct reports to not trust HR or report any concerns to HR, directly interfering with Pratt's ability to do her job. *See* R. 37, ¶¶ 56-60; R. 33-1 at 59:2-21. Rather than address the fact that Pratt was being retaliated against for protected reporting, Jacobs told Pratt she needed to "settle down." *See* R. 37, ¶ 60; R. 33-1, Pratt Dep. Ex. 29 at p. 221. Finally, Pratt directly tied the "trust issues" which resulted in her negative performance review to her protected reporting in her email to Jacobs on March 7, 2019, one week before she was fired. R. 33-1, Pratt Dep. Ex. 28 at p. 216.

The record is clear that Jacobs had reason to doubt that any trust issues with Pratt were legitimate performance issues rather than pretext for retaliation, because Jacobs knew managers were coaching their direct reports not to trust HR. R. 37, ¶ 60; R. 33-1, Pratt Dep. Ex. 29 at p. 221, Pratt Dep. Ex. 28 at p. 216. WAF's position, in essence, is that because individuals who were sexually harassing and racially discriminating against their direct reports did not trust Pratt—because Pratt was opposing their unlawful conduct—WAF's decision to fire Pratt for these trust issues is legitimate and not pretext for discrimination and retaliation.

WAF's pretext is further exposed by the fact that Jacob's performance review of Pratt conflicts with his testimony that Pratt's performance on

15

employee benefits issues was a reason for her discharge. *See* R. 33-1, Pratt Dep. Ex. 21 at p. 207. The employee benefits issues Jacobs cited as being a reason for Pratt's discharge occurred almost a full year before this performance review. *See generally*, R. 33-1 at 70-80. Accordingly, there is both reason to doubt the truthfulness of the issue, because Jacobs said it was one of Pratt's strengths, and there is reason to doubt it was factored into the decision to fire her, because the issue occurred more than a year before Pratt was fired. R. 33-1, Pratt Dep. Ex. 21, p. 207.

Because WAF's explanations for its conduct are demonstrably untrue or directly tied to discrimination or retaliation, a factfinder is allowed to infer discrimination with the proper prima facie showing.

### D.    Pratt showed similarly situated comparators.

WAF argues that Pratt failed to establish similarly situated comparators to her, making it impossible to establish a prima facie case of sex-based discrimination. WAF contends that Pratt "must—at a minimum—identify a male employee with the same job and responsibilities that reported to the same supervisor" as a comparator. This is not an accurate statement of the law.

"[S]imilar enough to permit a reasonable inference of discrimination ... is all *McDonnell Douglas* requires." *Coleman v. Donahoe*, 667 F.3d 835, 851-

16

52 (7th Cir. 2012). For the purposes of establishing a comparator, factors such as whether the individuals "dealt with the same supervisor," "were subject to the same standards," and "engaged in similar conduct" of comparable seriousness are relevant. *Coleman*, 667 F.3d at 847. "So long as the distinctions between the plaintiff and the proposed comparators are not so significant that they render the comparison effectively useless, the similarly-situated requirement is satisfied." *Id*. at 846 (cleaned up).

Critically, there is no requirement that the comparators perform the exact same job as Pratt, so long as the conduct at issue is similar. Accordingly, the fact that Pratt was fired in part because of the Utech report, while male managers who reported to Jacobs and were criticized in the Utech report in a similar manner were not disciplined in any way, can establish those managers as similarly situated men who received more favorable treatment. *See Crawford v. Indiana Harbor Belt R.R.*, 461 F.3d 844, 846 (7th Cir. 2006)(A "plaintiff should have to show only that the members of the comparison group are sufficiently comparable to her to suggest that she was singled out for worse treatment.").

Jacobs acknowledged that Boyd and Pratt both reported to him and were at a similar level in the organization. *See* R. 33-2 at 93:8-94:4. Jacobs also acknowledged Tom Behnke and Bob Braun as Pratt's peers in the

17

organization. R. 33-2 at 93-96. The Utech report is undisputably critical of Boyd, and at least similarly critical of Behnke and Braun, but WAF alleged the Utech report led to Pratt being fired while they received raises and bonuses. *See* R. 38, ¶¶ 22-23; R. 33-1, Pratt Dep. Ex. 18 at p. 202-03; R. 33-2 at 65. Because Jacobs evaluated all of these individuals, this comparison is meaningful to establish comparators under the *McDonnell Douglas* framework.

## II.     Pratt's discriminatory pay claim was valid.

WAF argues that Pratt failed to show her position as HR manager and Emery Coonen's position as EHS manager were similarly situated because after May of 2017, Coonen and Pratt had separate but overlapping job duties. While Pratt and Coonen did have separate job duties after Coonen was hired, WAF does not account for why Coonen was paid more for doing the same work Pratt had been doing before Coonen was hired. *See* R. 37, ¶¶ 21-22; *See also, David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 227 (7th Cir. 2017) (A Title VII pay discrimination claim must show a plaintiff and a comparator were paid unequally for equal work.)

WAF seemingly concedes that Pratt should have been paid the same during this period where Pratt performed Coonen's role and her role. *See* Def. Br. at 30 ("That Pratt may have temporarily performed Coonen's job

18

duties says nothing about why she should be paid the same as Coonen once she stopped performing those duties."). Pratt, when working as environmental health and safety manager and human resources manager, was paid 76% of what Coonen was paid while he worked as the environmental health and safety manager. R. 38, ¶¶ 8, 14.

This is plainly sex-based pay discrimination, and it undercuts WAF's rationale for the pay disparity after May of 2017. If Pratt was paid less for the same work in April of 2017, there is simply no reason to believe WAF's pretextual argument that Coonen was paid more as the EHS manager because the EHS manager role is more important than the HR manager role. WAF has no other explanation for the pay disparity based on Coonen's experience, education, or qualifications, because Coonen was not more experienced, educated, or qualified than Pratt. R. 38, ¶¶ 17, 19.

The fact that Pratt was paid $65,016 while she was expected to do her job and Coonen's job, when Coonen was paid $85,328 to do only his job, plainly demonstrates a sex-based disparity in pay. WAF has put forward no legitimate reason for this disparity, and therefore, summary judgment is inappropriate.

**III.    Pratt was retaliated against for Title VII-protected reporting.**

The primary basis for Pratt's lawsuit is WAF's retaliation against Pratt because of her Title VII-protected reporting. The record is replete with examples of Pratt opposing discrimination in the workplace, and then being directly or indirectly penalized for it. Ultimately, Pratt sent a detailed email outlining her concerns about retaliation to her manager, and was fired one week later. The timing in this case, combined with the clearly pretextual nature of the reasons proffered for Pratt's termination and the significant evidence of actual retaliation for protected reporting leading up to termination, allow a reasonable fact-finder to conclude Pratt was fired for her protected reporting.

> **A.    Pratt's affidavit is in harmony with her deposition testimony.**

WAF claims that the sham affidavit rule bars Pratt's evidence of incidents of sex-based discrimination and retaliation that she reported other than the February 2018 incident and her March 7, 2019 email.[5] WAF's

---

[5]    It is notable that the trial court simply ignored the legion of protected reports made by Pratt between April 13, 2017 and September 27, 2018 and did not make any findings about Pratt's affidavit.

20

uncited representation that Pratt did not testify about these incidents in her deposition is plainly false.

The sham affidavit rule bars evidence submitted via affidavit from being considered for summary judgment purposes when that evidence contradicts deposition testimony. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). It obviously does not bar the use of affidavits which support testimony at a deposition or which cover topics that were not covered at the deposition. *See, e.g., Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (Affidavits which are "clarifying or augmenting" deposition testimony are permissible).

At her deposition, Pratt testified about numerous incidents of protected reporting. Pratt testified she reported the incident in which Eugene Boyd called Jodi Rabitz a "bitch" during an interview for a managerial employee. R. 33-1 at 56:7-57:16. Pratt testified she reported Boyd "flipped off" a female employee who told him to move his car. R. 33-1 at 47:2-19. Pratt testified that she reported Tom Behnke for retaliating against a light duty employee. R. 33-1 at 202:6-8. Pratt testified she reported Boyd was mocking her in a gendered manner, saying she was a "big girl" and did not need the help she was requesting. R. 33-1 at 202:9-10. Pratt testified she reported that one of Boyd's managers sent one of her female staff an email

21

which stated "you smokin' hot." R. 33-1 at 203:1-204:14. Pratt testified she reported that her employees were being given secretarial work by other departments because they were women. R. 33-1 at 198:23-199:11. Pratt testified that she reported that she felt disrespected when Jacobs had screamed at Pratt in the HR office. R. 33-1 at 208:18-209:5. Pratt testified she reported an incident of racial discrimination by Culp on October 27, 2017. *See* R. 33-1, 46:1-47:1.

Pratt's notes, which she corroborated at the deposition, contain further protected reports. R. 33-1 at 86:23-87:8; *see also* 33-1, Pratt Dep. Ex. 29. Pratt's notes confirm she reported she was being retaliated against for her protected reporting on October 19, 2017.[6] *See* R. 33-1, Pratt Dep. Ex. 29 at p. 221. Pratt's notes confirm she reported Tom Culp's racially discriminatory remarks on November 2, 2017. *See id*. at p. 221-222. Pratt's notes confirm she reported a second incident of Culp racially discriminating against an employee on November 8, 2017. *See id*. at p. 222. Pratt's notes confirm she reported a third incident of racial discrimination by Culp on March 14, 2018. *See* R. 33-1, Pratt Dep. Ex. 29 at p. 225. These are detailed

---

[6]     At her deposition, Pratt testified about these incidents, but was not asked whether she reported them to Jacobs because it was clear from her notes that she did so.

and specific allegations of protected conduct, along with subsequent reports of retaliation for the protected conduct.

In each of these cases, Pratt directly testified that she reported the situation to Jacobs or others. Pratt's notes independently confirm both her deposition testimony and affidavit. There is no ambiguity. WAF is simply lying about Pratt's deposition testimony. Pratt plainly and repeatedly testified and averred that she reported each and every incident to her managers, and they did nothing. Pratt's affidavit augments her deposition testimony only by organizing and expanding on the specific details of each incident.

### B. Pratt's February 2018 report was a protected report.

Pratt's report about the February 2018 incident and the March 7, 2019 email to Jacobs should both be considered protected activity. While either report may not have received Title VII protection in isolation, the record is clear that they were part of a broader pattern of incidents and reports which clearly rise to the level of reports of Title VII-prohibited discrimination and harassment.

As an initial matter, WAF's argument that Pratt waived a "hostile work environment" argument is baseless. Pratt has consistently argued that the February 2018 incident and the subsequent report of that incident were

23

part of a broader campaign of sex-based discrimination and harassment by Boyd and Pratt's opposition to that conduct. *See* R. 36 at 13 ("Pratt complained that Boyd was engaged in a pattern of sex-based discrimination and harassment, and therefore, her complaints were protected by Title VII."). Under Title VII, sexual harassment is sex-based discrimination. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). While the EEOC amicus brief develops this argument further, Pratt plainly argued she was reporting sex-based harassment to the trial court and in her initial briefing. *See* App. Br. at 9 ("Pratt was clear in her reports that her concerns about Boyd were related to sex-based discrimination and harassment.").

Next, WAF argues the February 2018 incident could not be sexual harassment because it was "a single, isolated, and not unwelcome joke." Def. Br. at 32. WAF's assertion that Boyd's conduct was a single isolated incident defies belief and is wholly unsupported by the record.[7] WAF's own brief to the trial court identified five separate incidents of Boyd saying or doing something demeaning to women. R. 31 at 20-21. Pratt identified further examples in her filings. R. 37, ¶¶ 61-73.

---

[7]    Furthermore, the record is clear that at least one participant in the meeting found the joke unwelcome. *See* R. 33-1, Pratt Dep. Ex. 13, p. 166.

24

The law is clear that even if "a single act of harassment may not be actionable on its own," it may still be part of a valid claim of discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Accordingly, even if any of Pratt's reports did not, in isolation, merit Title VII protection, the reports were protected as part of a broad effort to oppose sex-based discrimination and harassment at WAF.

Boyd's pattern of behavior clearly suggested sex-based discrimination and harassment. R. 38, ¶¶ 30-33. While any individual report involving Boyd[8] may not have risen to the level where it was protected by Title VII, Boyd's pattern of behavior clearly provided reason to believe Boyd's conduct was sex-based discrimination and harassment prohibited by Title VII.

WAF's position appears to be that, because each incident involving Boyd, in isolation, would not permit an independent cause of action under Title VII, any reporting of these incidents as part of an overall pattern of Title VII-prohibited discrimination could not be protected. This contention is

---

[8]    For comparison, each of Pratt's reports about Culp would clearly be protected, as Pratt was reporting unambiguous racial discrimination. R. 38, ¶¶ 36-46. Her reports were ignored, and Culp, one of Boyd's direct reports, received a bonus in 2018. R. 38, ¶ 47.

25

unsupported by any case law and would essentially remove Title VII retaliation protections from sex-based harassment reports.

## C.    Pratt's March 7, 2019 email was a protected report.

WAF argues that Pratt's March 7, 2019 email to Jacobs was not protected because it merely repeated a previous allegation rather than opposing discrimination. As a matter of fact, this is false.

Pratt's complaints about her performance review were plainly protected activity, as Pratt's complaint was that Jacobs had given her poor ratings in retaliation for reporting the incident in February. R. 33-1, Pratt Dep. Ex. 28 at p. 216 ("[T]his is directly related to the events in February and due to my inability to turn a blind eye to those events, that there may be some vengeance involved."). Furthermore, Pratt reported that Boyd was retaliating against her for her report to Jacobs in February of 2018. R. 33-1, Pratt Dep. Ex. 28 at p. 216 ("[Other employees] were told specifically by Eugene that he was going to get me for 'this'. Ben, this is retaliation,"). Pratt reported that she believed Jacobs was denying her a bonus in retaliation for her reporting. R. 33-1, Pratt Dep. Ex. 28 at p. 217 ("I am aware that I am the ONLY person who did not receive a bonus. If [the] bonus was based on the 'Utech' findings as you stated to me, then, there should have been others that did not receive a bonus. That did not happen. Ben, understand, I

26

perceive this as more of the same retaliation that I have been dealing with for over a year now."). Pratt also references that she is paid less than similarly situated employees, and states "we actually need to have equal pay for equal work." R. 33-1, Pratt Dep. Ex. 28 at p. 218.

Each of these reports is a protected report under Title VII, as they oppose sex-based harassment, retaliation, and sex-based pay discrimination. WAF's argument completely ignores that Pratt separately complains of pay discrimination and retaliation from Jacobs and Boyd for her previous protected conduct.

### D. Jacobs' bare assertion on timing does not undercut Pratt's claim.

WAF claims Pratt cannot maintain a retaliation claim because Jacobs averred he decided to fire Pratt before she made a protected report on March 7, 2019. This misses the mark, both because Pratt made numerous protected complaints leading up to the March 7, 2019 email—which are detailed in the March 7, 2019 email—and because a reasonable finder of fact is not bound by a bald assertion that a decision was not made wrongfully. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (mere conclusory statements are not evidence); *see also*, R. 38, ¶ 56.

Just like a nonmoving party, the moving party bears the burden of showing summary judgment was appropriate and "cannot defeat summary

27

judgment with conclusory statements in affidavits; they must go beyond the pleadings and support their contentions with proper documentary evidence." *Foster v. PNC Bank, N.A.*, 52 F.4th 315, 320 (7th Cir. 2022) (cleaned up). [A] canonical formulation of the test for whether to grant summary judgment is whether, if the record at trial were identical to the record compiled in the summary judgment proceedings, the movant would be entitled to a directed verdict because no reasonable jury would bring in a verdict for the opposing party. *Russell*, 51 F.3d at 70 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A reasonable jury is not bound to accept Jacobs' testimony as to the date he made the decision to fire Pratt any more than they are bound to accept Jacobs testimony as to the reason he decided to fire Pratt.

The timing and lack of a non-pretextual explanation for the decision to fire Pratt strongly suggest Pratt was fired for her protected reporting. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007)("The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action."). It is uncontested that Pratt emailed Jacobs on March 7, 2019, and clearly and explicitly tied her reports to conduct protected by Title VII. R. 38, ¶ 56. Pratt identified the

28

investigation in February 2018 as the starting point of her protected activity but identified numerous issues that occurred between February 2018 and March 7, 2019 in her email. *Id.*

On March 14, 2019, a week after Pratt's explicit written report of retaliation for her protected reporting, Pratt was fired with no intervening event or any allegation of poor performance around that time. *Id.*, ¶ 57. This is the exact sort of suspicious timing which supports a retaliation claim. *See Boumehdi, LLC*, 489 F.3d at 793. WAF has produced nothing but conclusory allegations that Pratt's termination was being considered prior to March 7, 2019, and there is clear reason to doubt WAF's proffered reasons for Pratt's termination were truthful. Accordingly, Pratt's evidence of suspicious timing can support a reasonable fact-finder believing that Pratt met her burden on this issue.

## CONCLUSION

This Court should reverse the judgment of the trial court and remand Pratt's claims for trial. Pratt's claims all have merit, and she should be permitted to have her day in court.

Dated December 17, 2024.

ALAN C. OLSON & ASSOCIATES, S.C.

*Electronically signed by Nicholas O. Yurk*
Nicholas O. Yurk, SBN 1095278

29

Attorneys for Plaintiff-Appellant
2880 S. Moorland Rd.
New Berlin, WI 53151

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this brief: (i) complies with the type-volume limitation of Rule 32(a)(7)(B) and Circuit Rule 32(c) because it contains 6,018 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and (ii) complies with the typeface requirements of Rule 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word in 13-point Book Antiqua font.

*Electronically signed by Nicholas O. Yurk*
Nicholas O. Yurk
Attorney for the Plaintiff-Appellant, Debra Pratt

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of December, 2024, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

*Electronically signed by Nicholas O. Yurk*
Nicholas O. Yurk
Attorney for the Plaintiff-Appellant, Debra Pratt